## HENRY GORMAN *v.* STATE OF MARYLAND.
[No. 52, October Term, 1931.]

*Decided February 3rd, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*G. C. A. Anderson, Assistant Attorney General,* with whom were *Wm. Preston Lane, Jr., Attorney General, Herbert R. O'Conor, State's Attorney for Baltimore City,* and *William H. Maynard, Assistant State's Attorney,* on the brief, for the State.

PATTISON, J., delivered the opinion of the Court.

This appeal is from a judgment against Henry Gorman, who was convicted in the criminal court of Baltimore City on the charges (1) of keeping a room for the purpose of selling lottery tickets, (2) permitting a room of which he was then and there the owner to be used as a place of selling lottery tickets, and (3) having in his possession a book of lottery tickets; and who was sentenced to pay $500 and be imprisoned in the city jail for thirty days.

This, the companion case of No. 51 of the October term, 1931, *Heyward v. State,* 161 Md. 685, 158 A. 897, includes many of the questions presented and decided in that case, with additional ones, the chief among them being whether certain slips and other papers, found by Sergeant Hitzelberger of the Baltimore City police in the defendant's home, No. 1716 Brunt Street, Baltimore, Md., were admissible in evidence against the defendant.

The decision of this question depends upon the determination of the further question whether these slips, etc., were "procured by, through, or in consequence of any illegal search or seizure or of any search and seizure prohibited by the Declaration of Rights of this State"; or "by, through or in consequence of a search and seizure, the effect of the admission of which would be to compel one to give evidence against himself in a criminal case." Section 4A of article 35 of the Code (Supp. 1929).

The facts found in the record, upon which depends the determination of the question here presented, are substantially these: Sergeant Hitzelberger, upon information received by him, watched for two successive days the home of Gorman, where lottery violations were suspected. On each of these days he saw, between the hours of nine and eleven o'clock, fifteen or more colored persons, men and women, enter the house and thereafter leave, carrying papers in their hands. On the third day, some person, unknown to the sergeant, entered the house through the front door, leaving the door ajar, and, as he said, "I pushed it open and walked right in," following the person back into the kitchen. Hitzelberger had no warrant either to search the house or to arrest Gorman, the defendant. In the kitchen, he found Gorman and two other men. The two men were standing, while Gorman was seated at a table with slips and money before him, which he was putting in envelopes. There were at the time three envelopes upon the table, each containing slips and money. Hitzelberger was told by Gorman that he was waiting for the collector to come and get the tickets, and suggested that, if Hitzelberger would wait, he (the collector) would be there

in a few minutes. In addition to the slips, money, and envelopes lying upon the table, Hitzelberger saw three books in the drawer of the table, which was partially open. Upon seeing them, he opened the drawer further and took out the books. The slips upon the table, which Gorman was putting in the envelopes, were, he said, lottery slips. Gorman, in conversation with the officer, said: "I have been going for a good while (for two years) and it is the first time I have been caught."

It is upon the above stated facts that we are to decide whether or not the slips, money, and envelopes found upon the table, and the books taken from the table drawer, were procured "by, through or in consequence of any illegal search or seizure."

In 24 *Ruling Case Law*, page 717, it is said: "An unreasonable (illegal) search is an examination or an inspection without authority of law of one's premises or person, with a view to the discovery of stolen, contraband or illicit property, or for some evidence of guilt, to be used in the prosecution of a criminal action. The right of individuals to be exempt from such searches is guaranteed by the Fourth Amendment to the Constitution of the United States, and such amendment is incorporated generally in the constitutions of the several states. These provisions apply to all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors and the rummaging of his drawers that constitute the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offense." See *Wicks v. United States,* 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652; *Boyd v. United States,* 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746.

In *Agnello v. United States,* 269 U. S. 20, 46 S. Ct. 4, 6, 70 L. Ed. 145, decided October 12th, 1925, the court said: "While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an

incident to a lawful arrest therein. *Boyd v. United States, supra; Weeks v. United States, supra; Silverthorne Lumber Co. v. United States,* 251 U. S. 385, 391, 40 S. Ct. 182, 64 L. Ed. 319; *Gouled v. United States,* 255 U. S. 298, 308, 41 S. Ct. 261, 65 L. Ed 647. The protection of the Fourth Amendment extends to all equally—to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws."

Involved in this constitutional right of the citizen is the maxim that "every man's house is his castle"; and in the enjoyment of it he shall not be subjected to unreasonable or illegal searches and seizures.

In this case, the home of the defendant, who was suspected of being guilty of a misdemeanor, was entered by the officer without either a search warrant or a warrant for his arrest. The information he then had was practically no greater than that which he possessed at the close of the preceding day. If upon that information he could have procured a warrant to search the defendant's home, he should have done so before entering upon the premises of the defendant. If upon such information he could not have procured a warrant, then he was not upon that information justified in attempting a search of the house without a warrant, unless he had the consent of the defendant, and his consent cannot be found in the fact that the door through which the officer entered was partially open, nor did the defendant thereby waive the necessity of a warrant. It is true the door was not locked or fastened, but partially open, and he was not required to burst open the door; but, as already stated in the authorities from which we have quoted, the bursting open of the door was not the essence of the offense; it was the invasion of the privacy of the defendant's home. Under the facts and circumstances stated, the officer was, we think, a trespasser in entering the house of the defendant.

In *People v. Halveksz,* 215 Mich. 136, 183 N. W. 752, 753, two police officers entered a restaurant without a warrant either for the search of the premises or for the arrest of

the defendant, and, from the restaurant, they, without permission, went into the living rooms in the rear, and there made a search for and found a quantity of whisky. The defendant was placed on trial for having liquor illegally in his possession, and convicted. The Michigan Supreme Court, in reversing this conviction, and in holding the search and seizure illegal, said: "By what authority did the police officers enter the premises and make the search and seizure? The record discloses none. No power exists at common law to make a search and seizure without a warrant." And in the case of *State v. Andrews,* 91 W. Va. 720, 114 S. E. 257, where the defendant was suspected of having committed an assault, an officer was sent to the home of the defendant to inquire into a report which involved the guilt of the defendant. On reaching defendant's residence and finding the doors open, including the door of the closet in which he swore he found the whisky, he entered the house without any warrant, either for the defendant or for searching the house for liquor. He found no one in the house and made no arrest of the defendant, but, finding the liquor in the closet, he seized it and took it into his possession, and delivered it over to his superior officer. It was held that this search was illegal and in violation of the constitutional rights of the defendant.

There are cases to the effect that, where the officer hears disorder in the house of the defendant, as if the inmates were fighting therein, or where he sees from the outside through a window of a house that which amounts to a misdemeanor, or where there are odors emanating from the house indicating the fermentation or distillation of liquor, the officer may enter the premises without a warrant. This is allowed upon the ground that he learns or discovers of the commission of the offense through one of his five senses. In the first of the cases named he hears the noise and disorder within the house; in the second he sees the commission of the offense through the window of the house; and in the third he smells odors coming from the house, resulting from the

commission of an offense therein. But the case under consideration does not fall within this class of cases. It is true that, on different days, Hitzelberger saw persons go in the house and, after remaining for a short time, come out with papers in their hands. Why they should have disclosed the papers by holding them in their hands, when they were participating in an unlawful act, is rather hard to understand. Ordinarily their disposition would have been to conceal the papers, which they could easily have done by putting them in their pockets. These facts may have caused the officer to suspect that the law was being violated within the house, but he was without that knowledge acquired by the officers in the cases above mentioned. His was but a suspicion of guilt, which did not warrant his entrance in the house for the purpose of making a search therein, or for the arrest of the defendant without a warrant.

It is suggested in the brief of the State that, because of the violation in the manner stated of the lottery law therein, the property of the defendant lost its status as a private home or dwelling house, at least from the hours of nine to eleven in the morning. In support of this claim, they cite the cases of *Kasprowicz v. United States* (C. C. A.), 20 F. (2nd) 506; and *United States v. Berger* (D. C.), 22 F. (2nd) 867. In the first of these cases (*Kasprowicz v. United States, supra*), as stated in the opinion of the court, "federal prohibition agents, acting under a search warrant, found a brewing establishment in operation in the basement of a dwelling owned by Mrs. Kasprowicz, and occupied as a home by her and her husband, Joseph. There were eleven copper vats, of one hundred gallons each, in which mash was fermenting. * * * Three men were found in the basement. All five (including the husband and wife) were indicted under three counts for manufacturing intoxicating liquor, possession thereof, and maintaining a nuisance. They were convicted, and all join in this writ of error."

The claim here made, that the property ceased to be a dwelling house, was made in that case. The court there said: "Was this dwelling being used 'for the unlawful sale

of intoxicating liquor?' " If so, the warrant was lawful. Then the court said: "In our judgment the stated circumstances tended to show that the dwelling was being used for the sale of liquor, within a liberal but permissible scope of definition; and in defining the terms used in this statute it is not to be forgotten that section 3 of title 2 of the act * * * directs that 'all the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented.' " And upon the facts of that case the court sustained the conviction.

In the later case (*United States v. Berger, supra*), it was stated by the court in its opinion that "officers watching a dwelling house saw two five-gallon cans taken from it and carried away in an automobile. The automobile was stopped on the road by the officers, and the cans were found to contain moonshine liquor. The odor of mash was detected coming from the house. Upon an affidavit stating these facts a search warrant was applied for and obtained. On the search under it a still was found of commercial size. The evidence so obtained was admitted at the trial over the defendant's objection." On motion in arrest, the search warrant was held to have been properly issued. The court, in reaching its opinion, again calls to its aid the statute referred to in the other case, which provided that all the provisions of the act mentioned shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented. *National Prohibition Act,* tit. 2, sec. 3 (27 USCA, sec. 12).

The statute creating the offense charged herein contains no such provision as that found in the federal act. And in the absence of a statute containing such provision, "both federal and state constitutional provisions against unreasonable searches and seizures are liberally construed by the courts for the purpose of retaining unimpaired the fundamental rights guaranteed by them to the citizens." *Cornelius on Search and Seizure,* page 64, par. 13.

In this case, unlike the cases above cited, the room in which the offense is alleged to have been committed was not set apart to be used only in violating the provisions of the

statute, but was also used as a kitchen, in which the meals of the family were prepared. To hold upon the facts of this case that this room was not a part of the dwelling between the hours of nine and eleven o'clock in the morning, though a part of the dwelling at all other times of the day, would not be a liberal construction of the constitutional provisions. Nor would such a construction be consistent with the many cases, including lottery cases, which we have found, in which the search was held illegal where some part of the dwelling house was used in the commission of a misdemeanor. In fact we have found no case, nor have we been referred to any, where, in the absence of a statute, as in the federal liquor cases cited, it has been otherwise decided.

The conclusion we have reached as to the illegality of the search in this case results in our holding that the court erred in its rulings in the first three exceptions found in the record.

The first of these exceptions is upon the action of the court in overruling the petition of the defendant, filed and heard before the trial of the case on its merits. In this petition it was alleged that the State had in its possession the slips, money, envelopes and books found in the house of the defendant and taken therefrom by the officer, and that these were being held by the State to be used in evidence against the defendant. The prayer thereof asked that such papers be returned to the defendant because of the alleged illegal search and seizure resulting in the procurement of them.

The State assails the sufficiency of the petition, as well as the prayer thereof, contending that it is not in accord with the proper practice or pleading in such cases. It is true that the prayer does not in express language ask for the suppression of the evidence, but it asks for the return of it, in order that it may not be used against the defendant. If granted, it would have been, in effect, a suppression of the evidence. Not only is this the logical conclusion to be deduced therefrom, but the petition and the prayer are in conformity with those in the many cases which we have examined, both in the federal and state courts.

The second and third exceptions are to the rulings of the court in admitting (1) the slips, paper and money found upon the table, and (2) the books taken from the drawer of the table in the home of the defendant.

The fifth, sixth, seventh, eighth, ninth and tenth exceptions are to the rulings of the court in permitting the witness to testify as to the character of the slips, money, envelopes and books found in the home of the defendant, which we here hold were improperly admitted. It follows that any evidence as to their character was likewise inadmissible. The evidence admitted in the eleventh exception was thereafter stricken out.

The thirteenth and fourteenth exceptions are to the admissibility of evidence similar to that offered in *Heyward v. State, supra,* and there held to be admissible; and for the reasons therein stated we find no error in the court's rulings upon these exceptions.

Because of the errors in the rulings of the trial court herein pointed out, the judgment will be reversed and a new trial awarded.

*Judgment reversed and new trial awarded.*