## JACOB FOREMAN ET AL. *v.* STATE OF MARYLAND
[No. 37, October Term, 1943.]

*Decided December 15, 1943.*

416

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*E. Milton Altfeld* for the appellants.

*J. Edgar Harvey, Assistant Attorney General,* and *Thomas N. Biddison, Assistant State's Attorney for Baltimore City,* with whom were *William C. Walsh, Attorney General,* and *J. Bernard Wells, State's Attorney for Baltimore City,* on the brief, for the appellee.

SLOAN, C. J., delivered the opinion of the Court.

This appeal is from a judgment of the Criminal Court of Baltimore City, sentencing each of the defendants to pay a fine of $1,000 for selling racing tickets. There were fifteen counts in the indictment covering every phase and feature of the business. There was another indicted and tried with them, but he was found not guilty.

As usual in these outlaw racing cases, the only question submitted is the sufficiency of the search warrant and the admissibility of the evidence offered in consequence of it and predicated on it. In such case it makes no difference how guilty the defendants may be, we cannot pass on the merits anyhow; that is for the jury, Md. Constitution, Art. 15, Sec. 5, nor can the deficiencies of the warrant be supplied by the evidence. Act 1929, Chap. 194; Code, Art. 35, Sec. 5; *Hayward v. State,* 161 Md. 685, 158 A. 897; *Gorman v. State,* 161 Md. 700, 158 A. 903; *Baum v. State,* 163 Md. 153, 161 A. 244; *Sugarman v. State,* 173 Md. 52, 195 A. 324; *Zukowski v. State,* 167 Md. 549, 175 A. 595; *State v. Mariana,* 174 Md. 85, 197 A. 620; *Goodman v. State,* 178 Md. 1,

8, 11 A. 2d 635. In this record there are none of the facts in evidence, it having been stipulated that the validity of the search and seizure under the warrant offered in evidence and contained in the record would be the only question raised, but this divides the question raised by the appellant in two. One, "Are the facts related in the affidavit for the search warrant sufficient to constitute grounds for probable cause"; two, "Did the trial court err in ruling that the judge, to whom application for a search warrant is made, must determine the question of probable cause, not on the basis of his own interpretation of the facts related in the affidavit, but on the interpretation and significance of such facts to the application for the search warrant."

Taking the second question first, because the warrant should be quashed without further discussion if this contention be correct.

We said in *Goodman v. State*, 178 Md. 1, 9, 11 A. 2d 635, 639, quoting from *Cornelius on Search and Seizure*, 2d Ed., 373: "The question of probable cause must be determined by the judge or magistrate before whom the complaint is filed, and not the person who files or verifies the complaint and asks for the warrant." The mere asking of the applicant does not entitle the applicant to its issuance; the judge or magistrate addressed must pass upon the sufficiency of the facts related to him and determine whether the same, if true, would constitute probable cause, that is, facts which, if established later at a trial, would justify a verdict of guilty. *Allen v. State*, 178 Md. 269, 274, 13 A. 2d 352.

In this case, Lieutenant Amrein presented an affidavit to Judge Henderson of the Supreme Bench of Baltimore with the request that he issue, on the facts therein contained, a warrant to break into and search the premises at the intersection of Belvedere Avenue and the Western Maryland Railroad in West Baltimore. The facts contained in the affidavit and the warrant are identical so that it is unnecessary to discuss the facts in them separately.

In this case the issuing judge prefaced the warrant by saying: "Whereas it appears to me, the subscriber, Associate Judge of the Supreme Bench of Baltimore City aforesaid, by the written information which has been sworn to and signed by Lieutenant Ralph Amrein, of the city aforesaid, that there is probable cause, that the law prohibiting the betting, wagering and gambling on the results of trotting, pacing, and running races of horses is being violated and that a book or pool is being made on the result of trotting, pacing and running races of horses in the premises at Belvedere Avenue and the Western Maryland Railroad, occupied by the Arlington Ice Company; as defined in Article 27, Section 247, of the Public General Laws of Maryland, by the occupants in the said premises"; and it concludes, after a recital of facts related to the issuing judge, by saying, "The reasons and probable cause, as above set forth are grounds for requesting the issuance of this warrant," and then ordered its issuance. The judge not only expressed his opinion once, but twice, that the facts stated by Lieutenant Amrein were sufficient to justify the issuance of the warrant, and a *fortiori*, if established on trial, sufficient to convict. In this respect we are of the opinion that the issuing judge has complied with the provisions of the Act of 1939, Chap. 749, Sec. 259A; Code, 1939, Art. 27, Sec. 306.

The docket entries show that, on June 17, 1943, there was a motion to quash the search warrant, which was overruled. The sufficiency of a search warrant may so be determined by any judge having jurisdiction. *Goodman v. State,* 178 Md. 1, 11, 11 A. 2d 635; *Allen v. State,* 178 Md. 269, 273, 274, 13 A. 2d 352.

Are the facts stated in the warrant and affidavit of the applicant sufficient grounds for the issuance of the warrant?

The facts related by Lieutenant Amrein respecting the premises in the building of the Arlington Ice Company, at Belvedere Avenue and Western Maryland Railroad, cover the time from about noon to 6.30 P. M., from

May 19, 1943, to May 24, 1943, both days inclusive, were obtained by him principally from Officers Bees and Trcka, whom he had stationed there on the days named. Officer Trcka is said to have advised him that the entrance to the premises to be searched is in the rear of the ice factory, and the entrance is equipped with a heavy door fastened by a night lock, which appears to be new. Lieutenant Amrein, in the affidavit (repeated verbatim in the warrant) said: "It is the knowledge and belief of your affiant, that the said persons entering the said premises occupied by the said Arlington Ice Company by way of the said rear entrance do not go to any part of the premises which is open to the ice business and that the said men act in a very suspicious manner when entering or leaving the said premises, taking precaution to see that the said door is locked at all times. Further, it is the knowledge and belief of the affiant, that the said office on the second floor is equipped with telephone service and that all doors leading to the said office on the second floor are heavily re-inforced." The affidavit said that about 4.45 P. M. (May 21st) Officer Bees "saw a man described as wearing working clothes leave the said premises by this entrance; that at 4.50 P. M. the said officer saw a man wearing a chauffeur's cap leave the said premises by way of the heavy door; that at 5.15 P. M. the said officer saw a man wearing glasses leave the said premises by way of the same said door and walk around the corner of the said building out of the said officer's view but returned in three minutes and stood before the said heavy door looking about in a suspicious manner for a moment, then opened the said heavy door with a key and entered the said building," "that on May 22nd, 1943, Officer Frank Trcka, on instructions of the affiant, watched in the vicinity of the said premises occupied by the said Arlington Ice Company at Belvedere Avenue and the Western Maryland Railroad; that at 10.20 A. M., the said officer went to the rear of the said premises where he found that the said door of the said rear

entrance was secure; that about 12.35 P. M., the said officer saw the said man described as wearing a brown suit, grey hat and eye glasses, and having a patch upon his neck, arrive at the said rear entrance and after looking about in a suspicious manner, as though in fear of being watched or followed, opened the said door of the said rear entrance with a key and entered the said premises; that about 1.10 P. M., the said officer saw the said man described as wearing a grey suit and grey hat arrive and after looking about in a suspicious manner, open the said door of the said rear entrance with a key, then enter the said building; that at 4.55 P. M., the said officer saw the said man described as wearing a chauffeur's cap admit himself to the said building by way of the said rear door by use of a key, where he remained until 5.05 P. M."

There are many other such incidents, all involving the same parties or visitors. They were only watched during the afternoon. Lieutenant Amrein said they were the racing hours.

The defendants contend that the facts mentioned in the affidavit might apply to any legitimate business. Legitimate business is not usually done in back yards or behind locked doors; no one entered this building without a key, and none left without locking the door. These are characteristic of outlaw bookmaking. It is usually done in hide-outs, behind locked doors, and only the elect allowed to enter; a uniformed policeman can never get in unless he breaks in, and then only with a warrant which shows that his suspicions are well founded, and that there is a reasonable certainty that the goods sought will be found on the premises. If the cases which have come to this court are any criteria, the police are not often wrong in their suspicions and suspects. There is only one thing missing from this and the other warrants for lotteries and race tickets, and that is, they don't say what led the officers to suspect the places or persons. In every case they begin with rumor and gossip; it is impossible to get evidence on

which to base an indictment without a raid, and then it is not needed. As we said in *Goodman v. State,* 178 Md. 1, 11, 11 A. 2d 635, 640: "It is not easy to obtain evidence from the customers and patrons of outlaw bookmakers. It is a business that is not done openly, but secretly and stealthily. The operators must and do take precautions to prevent detection. The information gets around to the officers on the beat. These places need lots of two-dollar bets to keep going and while the customers are not always loquacious, there are too many of them carrying around the secret for all of them to keep it." And, as said by Judge Parke in *Allen v. State,* 178 Md. 269, 276, 13 A. 2d 352, 356: "An extended experience with the devices and shifts employed in the various forms of unlawful gambling in Baltimore City on the races of horses, together with their duty of enforcement of the criminal statutes, give the police officers a special knowledge which enables them to perceive and recognize the testimonial indicia of unlawful gambling. To be successful the crime must be covertly committed, be patronized, and the gambling and the gamblers protected against detection. The outside precautionary measures described by the warrant were clear indications of wrong-doing inside."

In this case, we are of the opinion that there was a showing of probable cause sufficient to justify the issuing judge in granting the warrant, and we, therefore, agree with him and with the trial judge in refusing to quash it.

*Judgment affirmed, with costs.*