## KERSHAW *v.* STATE

[No. 71, October Term, 1951.]

*Decided January 11, 1952.*

**136**

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Reuben Shiling,* with whom was *Joseph Rosenthal,* on the brief, for appellant.

*Kenneth C. Proctor,* Assistant Attorney General, with whom were *Hall Hammond,* Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *Charles E. Orth, Jr.,* Assistant State's Attorney, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a conviction on an indictment charging the appellant with violating the gambling laws. The case was tried by the trial judge without a jury.

On April 11, 1951, Officer Hagen and Sergeant Cohen of the Baltimore Police Department, after complaint, went to a dwelling house at 2537 E. Oliver Street, Baltimore. Sergeant Cohen waited across the street. Officer Hagen, with a book under his arm similar to that used by insurance collectors, knocked at the door. A Mrs. Edith M. Simms, the occupant of the house, came to the front door. Officer Hagen said he took his badge out of his pocket, showed it to her and told her he was from the Police Department, that he was there in answer to a complaint and asked to talk to her. Officer Hagen said: "She says all right come in". There was no hallway but a door leading from the vestibule into the living room. Officer Hagen said then: "I walked in the door and it was a living room, the first floor, and she continued back into the dining room and I followed her. * * * When I got to the dining room Sergeant Cohen was behind me. Walked back to the dining room and she continued through the dining room to the doorway between the dining room and kitchen, and on the dining room table I saw an Armstrong scratch sheet that had the results of two races and a Racing Form. Sergeant Cohen and myself we were in the room and the Sergeant

started to talk to her." Hagen said he does not recall whether a telephone rang in the back room. He denied that Mrs. Simms said "wait a minute".

Sergeant Cohen testified that he saw Officer Hagen go in with Mrs. Simms. He followed them into the dining room. "As I got into the middle room, second room, there was a scratch sheet and a Racing Form on the table, and on a little telephone table was a number of pads with race horse bets. I asked her whose they were and she didn't say anything. In a minute or so a man walked in from back in the summer kitchen." He said Charles Kershaw, the appellant, came in and: "I identified myself and asked his name. He said his name was Charles Kershaw. I asked him if these belonged to him. He said 'they did', and I said do you live here. He said 'no I live at 23 Overbrook Road'. I said did this woman have anything to do with this? He said 'no, it is all mine'. I said how long have you been there. He said 'two weeks' * * * 'Making Book' * * * I picked the race bets up and took him into the Northeastern Station. I charged him and Mrs. Simms, and at the trial before the Magistrate he took blame for everything." The pads contained names of horses which ran on April 11, 1951, and represented 181 race bets, $652.00 "in play".

Mrs. Simms testified that she lived in the house with her husband and three children. She said she had known Kershaw for ten years. Kershaw's wife was away and he said he was having some work done at his home. He rented her upstairs middle room for $10.00 per week. She gave him permission to use her telephone and the privileges of the kitchen and dining room. She testified that on April 11th someone came to her door. She said: "Well, I went to the door and I knew I just paid my insurance man and I saw this man standing there with an insurance book. I opened the door and said what is it? He opened the book, and when he opened the book I saw it didn't have anything on the pages. Then he pulled out a badge. He said I am an officer. I said what do you want. He said I would like to speak with you.

I said well you are speaking to me. He said can I come in? I said wait a minute, the phone is ringing I will be back in a minute. I went to answer the phone. When I turned around from the phone there was three men standing in the dining room, and the one man said where's that man? I said what man? He said that man that was here. I said I didn't see no man, no man is here right now, what do you want? * * * I hadn't given my permission. He said he wanted to talk to me. I said you are talking to me. He didn't even say what he wanted." She said nothing could be observed from the vestibule, where Officer Hagen stood, in the dining room.

Appellant contends that the evidence in this case, obtained without a search warrant was inadmissible against the appellant, and the arrest without a warrant was unlawful.

Code, Article 35, Section 5, commonly known as the "Bouse Act", provides that no evidence shall be admissible in a trial of a misdemeanor which has been procured by an illegal search and seizure. Here the trial judge had the opportunity of observing the witnesses and of judging of their credibility. He evidently believed that Mrs. Simms invited Officer Hagen into the house and that following that invitation Sergeant Cohen naturally followed behind him. We cannot say that this conclusion from the evidence was clearly erroneous. Rule 7 (c) of the Rules of Practice and Procedure. Mrs. Simms, the housewife in the dwelling, certainly had authority to invite the officers in the house. If they were there at her invitation, which the trial judge evidently found, appellant cannot object to their presence where the racing paraphernalia were in plain view. There was credible testimony that the appellant admitted that this gambling paraphernalia were all his and that Mrs. Simms had "nothing to do with it". "We may well conclude therefrom that these things were not 'procured by, through or in consequence of any illegal search or seizure' within the meaning of

the statute. 'A search implies some exploratory investigation. It is not a search to observe that which is open and patent.' *Smith v. United States,* [4 Cir.] 2 F. 2d 715, 716; *Boyd v. United States,* [4 Cir.] 286 F. 930". *Heyward v. State,* 161 Md. 685, 694, 695, 158 A. 897, 900. See also *Lucich v. State,* 194 Md. 511, 516, 71 A. 2d 432, 434. *Hubbard v. State,* 195 Md. 103, 72 A. 2d 733.

When the appellant promptly admitted his violation of the law to the officers by conceding the possession of the betting paraphernalia and admitting that he was "Making Book", that is, keeping a gambling house, "and when the commission of the offense was thus disclosed to the officer's own view, there can be no doubt as to the legality of the ensuing arrest." *Blager v. State,* 162 Md. 664, 666, 667, 161 A. 1, 2. Of course, if a misdemeanor is committed in the presence of an officer who is charged with the enforcement of the law, he is authorized, without a warrant, to arrest the offender. As an incident of the arrest he is authorized to search the prisoner and the tangible evidence or instrument of the crime, whether upon his person or within his use and immediate possession can be seized, taken into possession and examined. *Callahan v. State,* 163 Md. 298, 301, 162 A. 856. *Hill v. State,* 190 Md. 698, 701, 702, 59 A. 2d 630. The judgment will be affirmed.

*Judgment affirmed, with costs.*