# GRIFFIN *v.* STATE
## (Three Appeals in One Record)
### [No. 2, October Term, 1952.]

*Decided November 11, 1952.*

*Motion for rehearing, filed December 5, 1952, denied December 12, 1952.*

*Memorandum on motion for rehearing filed December 12, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*R. Palmer Ingram* and *Malcolm J. Coan* for the appellant.

*Ambrose T. Hartman, Special Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City* and *Edwin A. Gehring, Assistant State's Attorney,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

These three appeals were brought by Richard Griffin from convictions by the Criminal Court of Baltimore on three indictments charging violations of the statutes prohibiting lotteries and gambling on races.

On October 15, 1951, shortly before noon, Officer Thomas McKew and two other policemen noticed three

men enter the back door of appellant's home at 1002 North Durham Street. McKew approached the house and, by peeping through a side window, saw a man sitting at a table and several men standing. He also saw "a pad of slips and a conventional lottery book open on the table." According to his testimony, he had no search warrant but he knew that the slips and the book were lottery materials. He went to the back door, and just as he was about to ring the bell an unidentified Negro opened the door. As soon as the officer showed his badge and identified himself, he was admitted. He recognized the man sitting at the table to be appellant, arrested him, and seized the book and the slips. He then called in the other two officers. On the second floor he seized another lottery book and slips. Some of the slips were bets on horse races.

Appellant objected to the admission of the gambling paraphernalia in evidence, but the objection was overruled. He claims that the search and seizure were illegal. The Bouse Act, upon which he relies, provides that no evidence in the trial of misdemeanors shall be deemed admissible where the same shall have been procured in consequence of any illegal search or seizure or of any search and seizure prohibited by the Declaration of Rights of this State. Laws 1929, ch. 194, Laws 1947, ch. 752, Laws 1951, chs. 145, 704, 710, Code 1951, art. 35, sec. 5.

Article 26 of the Maryland Declaration of Rights condemns (1) all warrants, without oath or affirmation, to search or to seize, and (2) all general warrants. In this case the arresting officer had no warrant of any kind. The question for decision is whether the gambling paraphernalia introduced in evidence at the trial had been procured by "illegal search or seizure."

The Fourth Amendment to the Constitution of the United States, which forbids unreasonable searches and seizures, is a limitation upon the powers of the Federal government. That amendment originated in the determination of the framers of the Bill of Rights to secure

against the Federal government those safeguards which had grown up in England to protect against unreasonable searches and seizures such as had been made under general warrants issued by authority of the British government. *Boyd v. United States,* 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746.

Some of the States have constitutional provisions, some have statutory provisions, forbidding unreasonable searches and seizures. In *People v. Chiagles,* 237 N. Y. 193, 142 N. E. 583, 32 A. L. R. 676, Judge Cardozo said: "It is thus the statutes of New York express the principle that English law received as the outcome of the prosecutions of Wilkes and Entick. * * * The immunity is not from all search and seizure, but from search and seizure unreasonable in the light of commonlaw traditions." We accordingly hold that the term "illegal search or seizure," as contained in the Bouse Act, means unreasonable search or seizure according to the standard of the common law. *Wood v. State,* 185 Md. 280, 285, 44 A. 2d 859.

Generally, a police officer has no right to break into the privacy of a home and make a search for evidence without a warrant for that purpose. No mere belief that an article sought by law enforcement officers is concealed in a private dwelling furnishes justification for a search of the dwelling without a warrant, even though the facts show probable cause. Accordingly, after the passage of the Bouse Act, the Court of Appeals held in *Gorman v. State,* 161 Md. 700, 158 A. 903, that where a police officer, suspecting a violation of the lottery law in a certain house because of the number of persons entering and leaving it, entered it through an open door without a warrant and seized lottery books and slips found in the house, such articles were procured by illegal search and seizure and were inadmissible in evidence against the householders.

Nevertheless, it is the unquestioned law of Maryland that if a misdemeanor is committed in the presence or view of a police officer, he may arrest the offender forth-

with without a warrant. *Heyward v. State,* 161 Md. 685, 692, 158 A. 897; *Blager v. State,* 162 Md. 664, 666, 161 A. 1; *Callahan v. State,* 163 Md. 298, 301, 162. A. 856; *Silverstein v. State,* 176 Md. 533, 540, 6 A. 2d 465; *Kershaw v. State,* 199 Md. 135, 85 A. 2d 783. In 1871 Judge Alvey used the following language in his opinion in *Mitchell v. Lemon,* 34 Md. 176, 181, in defining the authority of the members of the Police Department of the City of Baltimore: "Such officers, by the common law, have full power to arrest and detain the offender, where the offense is committed in their view, and this, whether the offense be one at the common law, or created by statute or police regulation. Indeed, without such power, it would be impossible to execute the various police regulations of a prohibitory or preventive character. For it is obvious, if it were necessary before arresting an offender, caught in the act of offending, that a magistrate's warrant should be obtained, many offenses and violations of the police regulations, would be accomplished and the offender, if transient and unknown, would escape altogether. This is not contemplated either by the statute conferring the police power, or the common law"

We specifically hold that it is lawful for a police officer without a warrant to enter and search a dwelling when he can see from the outside that a crime is being committed inside. *Agnello v. United States,* 269 U. S. 20, 46 S. Ct. 4, 6, 70 L. Ed. 145; *Johnson v. United States,* 333 U. S. 10, 68 S. Ct. 367, 370, 92 L. Ed. 436.

Appellant claimed that the table, on which the lottery books and slips were lying, was about four feet from the window, and that the officer could not possibly have read what was in the book or on the slips. Therefore, he earnestly contended, the officer did not see any violation of law by looking through the window. On the other hand, the officer, while admitting that he could not read what was written in the book or on the slips until after he had entered the house, declared that the table was not more than two feet from the window,

and, as it was broad daylight, he could see a conventional lottery book and lottery slips.

It is immaterial that the invading officer in the case at bar could not read any of the notations in the book or on the slips before entering the house. We reaffirm the axiom that a crime is considered as being committed in the presence or view of an officer when any of his senses afford him knowledge that it is being committed. *Bass v. State,* 182 Md. 496, 505, 506, 35 A. 2d 155. Thus, knowledge of a crime may be acquired through the sense of smell. *McBride v. United States,* 5 Cir., 284 F. 416, *certiorari* denied, 261 U. S. 614, 43 S. Ct. 359, 67 L. Ed. 827; *Schulte v. United States,* 5 Cir. 11 F. 2d 105; *De Pater v. United States,* 4 Cir., 34 F. 2d 275, 74 A. L. R. 1413. For instance, in *Cope v. State,* 157 Tenn. 199, 7 S. W. 2d 805, where officers observed a light in the front room of the defendant's home, and could see figures walking near the light, and there was a strong smell from the cooking of mash and whiskey, and, although the curtains in the kitchen were drawn, the officers entered the house and found a still in operation in the kitchen, the Court decided that the officers were justified in making their search without a warrant. In Wisconsin it has been held that a breach of the peace is considered as being in the presence of an officer where he hears a disturbance within a house while he is outside. *Hawkins v. Lutton,* 95 Wis. 492, 70 N. W. 483. And in North Carolina it has been held that where a breach of the peace is committed in the presence of an officer, it is immaterial that he could not at that time actually see the offenders on account of darkness. *State v. McAfee,* 107 N. C. 812, 12 S. E. 435, 10 L. R. A. 607.

Of course, a mere suspicion of an officer that the accused person is committing a misdemeanor in his presence is no justification for an arrest without a warrant. In deciding whether an officer was justified in making an arrest without a warrant for a misdemeanor, the criterion is whether the circumstances presented to the officer through his senses were sufficient to justify

a sincere belief that the accused was committing the misdemeanor in his presence. *Silverstein v. State,* 176 Md. 533, 538, 6 A. 2d 465, *Peru v. United States,* 8 Cir., 4 F. 2d 881, 883.

The arresting officer in this case testified that he had been a member of the police force of Baltimore for five years, and during two of those years had served as a special investigator in lottery and other gambling cases. It is recognized that an officer charged with the duty of enforcing the gambling laws can view circumstances in the light of his experience in deciding whether the law is being violated in his presence. *Walker v. State,* 195 Md. 412, 418, 73 A. 2d 508, 510. We hold the view that long experience of a police officer with books and slips used in the operation of lotteries gives him a special skill that enables him to detect them readily as unlawful gambling paraphernalia. *Foreman v. State,* 182 Md. 415, 421, 35 A. 2d 171.

In this case the officer had been watching appellant's home on more than one occasion, believing that it was "a pick-up station" for gambling operations. After he saw the three men enter the back door of the house, he glanced through a side window and saw the open book and the slips lying on the table. He swore in the Court below that he knew from his experience in lottery cases that the book and the slips were being used for the purpose of a lottery. We think the trial judge was right in finding that the circumstances presented to the officer were sufficient to justify his sincere belief that the lottery law was being violated in his presence.

For these reasons we hold that the search and seizure were lawfully made by the police. As the judge ruled correctly in admitting the gambling paraphernalia in evidence, the three judgments of conviction must be affirmed.

*Judgments affirmed, with costs.*

## ON MOTION FOR REHEARING

PER CURIAM:

Defendant complains that the crux of the decision in this case is to be found in the following statements in the opinion: "We specifically hold that it is lawful for a police officer without a warrant to enter and search a dwelling when he can see from the outside that a crime is being committed inside. * * * In deciding whether an officer was justified in making an arrest without a warrant for a misdemeanor, the criterion is whether the circumstances presented to the officer through his senses were sufficient to justify a sincere belief that the accused was committing the misdemeanor in his presence." The complaint is that the second sentence quoted cuts down the first by broadening the right of arrest from arrest for a misdemeanor committed in the officer's presence to arrest for a misdemeanor which the officer had probable cause to believe was committed. This was not the purpose and is not the effect of the sentence complained of. We did not broaden the right to arrest without a warrant, but merely undertook to explain, in the circumstances of the instant case, the evidence sufficient to show that a misdemeanor had been committed in the officer's presence. The event showed conclusively that a misdemeanor had been committed in close proximity to the officer. The officer testified that he saw the book and slips used for the purpose of a lottery. Appellant claimed he could not see this. If the officer had been blind, completely intoxicated, or otherwise unconscious, he could not have seen what he testified to. The sentence of which appellant complains merely suggests a measure or test of testimony which an officer may honestly give in the circumstances, and which the trier of facts and this court may accept as legally sufficient and true in fact. To this extent we did not subtract from, but added to, the legal requisites of an arrest without a warrant.