## HARRIS *v.* STATE

[No. 15, October Term, 1953.]

*Decided November 6, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Joel J. Hochman* and *William J. O'Donnell,* for appellant.

*Charles McC. Mathias, Jr.,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *Theodore C. Waters, Jr.,* Assistant State's Attorney, on the brief, for appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

This appeal from a judgment of the Criminal Court of Baltimore City against the appellant for unlawfully possessing lottery books, tickets and similar paraphernalia, raises two principal questions: first, the validity of the search warrant in the execution of which the State's testimony was secured; and second, the Court's ruling restricting cross-examination of a state witness by the appellant.

The appellant was a tenant in an apartment on the first floor rear of 1609 E. Lombard Street. Like many buildings in the old section of Baltimore, this three-story structure has a covered side passageway or alley, approximately three feet wide, completely within the property lines. The alley lies between the wall on the west boundary of the property, which supports the overhanging floors, and an interior wall; and it extends from the street to a side yard, without any door, gate or

other barrier. Access to the appellant's premises was through this passageway. The front door of the house leads into a room which was not part of the appellant's occupancy. Acting upon instructions of his superior, on November 12, 1952, Officer Taylor, "dressed as an insurance collector" and carrying a collector's book, entered and without obstruction went through the side passageway to a point opposite the appellant's door, for the purpose of observing her actions.

The officer reported to Sergeant Overton that while walking through the alley and passing the appellant's door he saw her "standing just inside the doorway and looking through a bundle of yellow conventional lottery slips." Two days later Sergeant Overton made affidavit to the facts so reported to him, and obtained a search warrant. The Sergeant's testimony in court disclosed that at about 12:40 P.M. on November 14th he and Officer Taylor proceeded to the premises with the warrant; that the officer forced the door and they entered; and that the appellant, together with one Grimes, was seated at a table with various "number paraphernalia" on the table. The appellant objected to the admissibility of this evidence, and the Court took the evidence subject to exception. At the appellant's arraignment her attorney had seasonably filed a motion to quash the search warrant; and the Court, following Rule 3 (4) of the Criminal Rules of Practice and Procedure, reserved his ruling until the conclusion of the testimony. Set forth as one of the bases for quashing the warrant was the averment that Officer Taylor was illegally upon the premises in walking through the side alleyway.

The only testimony in the case which the prosecution offered was that obtained with the aid of the search warrant on November 14, and nothing directly resulting from the officer's observations on November 12. When called by the appellant, Officer Taylor testified on direct examination, "I was under the impression and I am still under the impression that that is a hall [apparently a reference to the alleyway] that is public to the tenants

of those dwellings which would make it a public hall to the different apartments in the house."

The record does not clearly indicate how many other persons or families reside in the dwelling, but Officer Taylor testified, without objection, "There is another party who lives on the third floor I know. * * * I didn't know at that time who she was, but I did know there were other people in the apartment because I had seen them going up the stairs."

The sergeant testified on cross-examination:

"Q That isn't a public alley, is it?

A. No, sir.

Q. It has no name on it, it is an alley for the use of the occupants of the two people of 1607 and 1609 E. Lombard Street, is that correct?

A. I would say so, yes, sir."

At the conclusion of the testimony the Court overruled the appellant's motion to quash the warrant and her objections to the testimony as to the fruits of the search thereunder.

The general rule as to the protection under the Bouse Act (Art. 35, Sec. 5, 1951 Code) against unreasonable searches and seizures is well known and is not in controversy here. See *Gorman v. State,* 161 Md. 700, 158 A. 903; *Bass v. State,* 182 Md. 496, 35 A. 2d 155; *Griffin v. State,* 200 Md. 569, 92 A. 2d 743, cert. den. 345 U. S. 907, 73 S. Ct. 647. We also treat as settled law that a side alley, like a yard or lawn, if used as part of the "curtilage", is within that protection. See *People ex rel. Murphy v. Gedney,* 10 Hun. (N. Y.) 151; *Caledonian R. Co. v. Turcan,* (1898) A. C. 256; *Machen, Search and Seizure,* 101; 25 *C. J. S.,* Curtilage, page 65; *Wanzer v. State,* 202 Md. 601, 97 A. 2d 914. We may grant too that the mere absence of a physical barrier, such as a fence, or door or gate, is not conclusive of the question as to whether the alley is a part of the curtilage, *Craven v. State,* 22 Ala. App. 39, 111 So. 767; *Bare v. Commonwealth,* 122 Va. 783, 94 S. E. 168, for it is not uncommon in Baltimore City and elsewhere for

the front or side yard or garden not to present a physical bar to strangers, yet the area is properly regarded as part of the home.

If the area which the officer traversed in order to observe the appellant were part of her own private occupancy our holding well might be that he had no right to enter there to make an exploratory search or even to observe appellant to discover violations. *Cf. Gorman v. State, supra.*

The facts here, however, are otherwise. The appellant herself established through her witness, Officer Taylor, and also on cross-examination of Sergeant Overton, that others as well as she used this side alley; and not only tenants in 1609 used it but even those living in 1607, another three-story house, since the fence between the two side yards was down. It would, we think, be an undue extension of the rule to hold illegal the officer's entering and observing, visually and without physical probing, the appellant's possession of lottery tickets, in an area in which the appellant had so limited an interest, and which was shared by others who are strangers to her.

This case falls between the extremes of an invasion of purely private premises which are clearly protected, *Gorman v. State, supra,* and entry upon an open field which the decisions hold not within the protection even though a civil trespass may be perpetrated. *Hester v. U. S.,* 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898; *U. S. v. Wilds,* 87 F. Supp. 459, 460; *Nix v. State,* 47 Okla. Cr. 246, 288 P. 365; *Turner v. State,* 20 S. W. 2d 764 (Tex. Cr. App., 20 S. W. 2d 764). The facts here, it seems to us, are within the rule of *Eisenstein v. State,* 200 Md. 593, 92 A. 2d 739, where policemen entered a common hallway of an apartment house without a search warrant, and while on the common stairway of the building encountered the defendant shoving lottery tickets into his pocket. The Court held that this was evidence of a violation in the officers' presence which justified the arrest.

The appellant urged a distinction between the *Eisenstein* case and this, based upon the circumstance that in the former the police went to the premises in the regular course of their business upon information that someone (not Eisenstein) was engaged in a violation of the narcotic law, while here the officer entered the premises with the specific object of observing the appellant. We think this distinction without legal significance; for if the side alley in this case was of the character we have just indicated, the appellant cannot be heard to complain if the officer observed from the side of the house what any number of other persons, who are totally unrelated to the appellant and who habitually use the side area, could readily observe.

How can it be appropriate to speak of an invasion of the privacy of a person who stands in her doorway, flaunting evidences of crime in a place exposed to the sight of a number of neighbors and their families and visitors, including tradespeople who have an implicit invitation to come and go without hindrance? We think it stretches the plain meaning of words and distorts the interpretation historically put upon them to call the act of this policeman an unreasonable search. There was no force or rummaging, or physical entry, in fact no contact whatsoever with the appellant or anything in her apartment. This was not even a peeping operation. To behold at a passing glance what the appellant chose to put on display at her front door was not unreasonable and not a violation of her rights.

In the view we take of the evidence the fact that the officer carried a book to make it appear that he was an insurance agent is immaterial. *Cf. Silverstein v. State,* 176 Md. 533, 6 A. 2d 465; *Fischer v. State,* 195 Md. 477, 481, 74 A. 2d 34, 36; *Kershaw v. State,* 199 Md. 135, 85 A. 2d 783. Subterfuge and deceit which induce permission to enter private premises may not avail; but if, as we hold, the officer's entry into the alley was under the existing circumstances reasonable

and beyond legal attack, we perceive nothing in his carrying an insurance book which will change the character of his presence there, for it in no way advantaged him or disadvantaged the appellant.

We now reach the second ground of the appeal, namely, the trial judge's interruption of the appellant's cross-examination of Sergeant Overton. The sergeant had not made the observations on November 12th. Officer Taylor made them on that date and it was upon the information he furnished the sergeant that the latter procured the warrant. *Cf. Allen v. State,* 178 Md. 269, 275, 13 A. 2d 352, 355; *Smith v. State,* 191 Md. 329, 62 A. 2d 287, 291, 5 A. L. R. 2d 386, cert. den. 336 U. S. 925, 69 S. Ct. 565, 93 L. Ed. 1087. At the trial below appellant's counsel defended his right to ask the sergeant certain questions which he claimed were designed to show that "the affiant information that was given him is not proper information." Appellant concedes here that she could not offer testimony to controvert the allegations of the affidavit or the warrant.

It is the settled law of Maryland that if the affidavit is sufficient on its face, it cannot be contradicted as a reason for quashing the search warrant. *Smith v. State, supra; Goss v. State,* 198 Md. 350, 354, 84 A. 2d 57, 58; *Adams v. State,* 200 Md. 133, 139, 88 A. 2d 556, 559. The remedy prescribed by the statute in case of a false affidavit is prosecution for perjury, not impeachment of the affidavit. Art. 27, Sec. 329, 1951 Code. One may readily perceive in this rule possibilities of abuse by police officers, but the rule has been stated so often that the question can no longer be considered an open one. If change should be found desirable it would have to come legislatively rather than judicially.

It is insisted, however, that the questions were asked Sergeant Overton, not for this purpose, but to explain the nature and location of the passageway. As we read the record, the questions sought to establish the private character of the side alley. The affidavit and warrant were silent as to this, as it is not customary or necessary

to negative in such papers that the premises where the affiant or his informer obtained the recited information were private property. Whether under the circumstances it may be said that the testimony proffered in cross-examination is not in direct contradiction of the affidavit or warrant and therefore permissible, or that it is a direct attack on the allegations in these documents and thus forbidden, we need not determine. There is another answer, which is free from doubt and concludes the point raised. The trial judge did not forbid inquiry of this witness if recalled by the appellant. His ruling was therefore unlike the one that caused reversal in *Noel v. State,* 202 Md. 247, 96 A. 2d 7. Here the Court ruled merely that the questions were beyond the proper scope of cross-examination and while the point is fairly debatable, the matter is ordinarily one resting in the Court's discretion. *Corens v. State,* 185 Md. 561, 566, 45 A. 2d 340, 344; *Apple v. State,* 190 Md. 661, 665, 59 A. 2d 509, 511; *Williams v. Graff,* 194 Md. 516, 523, 71 A. 2d 450, 453, 23 A. L. R. 2d 106. The appellant did not avail herself of the right to make the sergeant her own witness to prove the facts.

We find therefore that there was no prejudicial error in the Court's action restricting cross-examination of Sergeant Overton; and finding no other errors the judgment will be affirmed.

*Judgment affirmed, with costs.*