# HYMIE FRANKEL *v.* STATE OF MARYLAND
# NATHAN FRIEDMAN *v.* SAME

[Nos. 27, 28, October Term, 1940.]

554

*Decided November 1st, 1940.*

<br>

The causes were argued before Bond, C. J., Parke, Sloan, Mitchell, Johnson, and Delaplaine, JJ.

*Maurice J. Pressman* and *Sol C. Berenholtz,* for the appellants.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom were *William C. Walsh, Attorney General, J. Bernard Wells, State's Attorney* for Baltimore City, and *Thomas N. Biddison, Assistant State's Attorney,* on the brief, for the State.

Johnson, J., delivered the opinion of the Court.

These appeals from judgments of the Criminal Court of Baltimore City are contained in one record, and each appeal presents substantially similar questions.

Appellants and others were indicted for having unlawfully (a) bet on the result of horse races; (b) sold books and pools on horse races; (c) occupied certain premises for betting and gambling, and (d) rented and kept certain premises for the purpose of gambling. The indictment contains fifteen counts, each setting forth some specific violation of the statutory provisions contained in Code 1939, art. 27, secs. 288-307, inclusive, relating to gaming. All traversers pleaded not guilty and the issues thus raised were tried before a jury, who found each of them guilty as to the fourth count and not guilty as to the remaining counts. The fourth count charged them with having unlawfully established, kept and occupied at Baltimore City "a certain house, building, grounds and place and a portion of a certain house" for the purpose of "betting, wagering and gambling in divers manners and by divers means," contrary to the form of the Act of Assembly.

Motions for new trials having been filed by all of them and overruled by the Supreme Bench of Baltimore City, a judgment was entered against each traverser, from which two of them prosecute the present appeals.

Prior to the return of the indictment, Sergeant Ralph Amrein, under the provisions of Code, article 27, section

306, made under oath before Honorable Edwin T. Dickerson, one of the Judges of the Supreme Bench, an application for a warrant to search 110 Jackson Place, allegedly conducted as a private dwelling, and seize "all race horse paraphernalia and other evidence found therein, including rundown sheets, betting slips, telephones * * * pads, crayons and racing forms" used in the operation of gambling upon horse races. It was therein represented that the Sergeant had probable cause to believe a misdemeanor was being committed, and the law with reference to maintaining bookmaking establishments was being violated upon the premises mentioned. As a basis for the belief of probable cause that the premises were being so used, the affidavit forming the application for the warrant stated that on January 30th, 1940, two named police officers, under direction of the affiant watched the premises between the hours of 1:25 P. M. and 3:41 P. M.; that within the above period they observed twenty-one separate occasions upon each of which from one to four men at different intervals entered the premises through the backyard and were admitted, while at other times some attempted to enter, but were refused admittance, and at other times certain numbers of persons left the premises; that on the afternoon of the following day, between 1:20 P. M. and 4:00 P. M., twenty-seven men at various times singly or in pairs entered the premises and were admitted, while three left together; that on both afternoons those who entered were admitted by some one inside, who opened the door from within after a given signal had first been made by rapping on the door or outside shutter.

Upon that application Judge Dickerson, under the authority of the statute, issued a search and seizure warrant directed to Sergeant Amrein. The warrant contained the material matters mentioned in the application and concluded by commanding Sergeant Amrein to enter the premises known as 110 Jackson Place, search for such bookmaking articles and paraphernalia as were mentioned in the application and bring the same, also the

occupants of the premises, to the issuing judge, or to some police justice of Baltimore City, to be dealt with according to law.

The denial at the trial of appellants' motions (a) for the return of articles seized under the warrant, and (b) to quash the warrant, occasioned the first two exceptions, while the third was taken to the court's action in permitting the introduction by Sergeant Amrein at the beginning of the trial of the application and the search warrant.

These exceptions may be considered together since the principal contention with reference to them is (1) that no probable cause is shown in the application for the warrant, (2) that this being true, the warrant which was issued upon that application is invalid, (3) that therefore their introduction in evidence to justify the officer's presence upon the premises was improper. If the first of these premises be true, the other contentions would logically follow, so that the important question to be considered at the outset is whether the application did in fact disclose probable cause for the judgment of a rationally minded man that the law was being violated at 110 Jackson Place by making and selling books upon horse races or some other allied form of gaming defined by the statute referred to.

Probable cause under the statute has so recently been considered by this Court in *Goodman v. State*, 178 Md. 1, 11 A. 2nd 635, and *Allen v. State*, 178 Md. 269, 13 A. 2nd 352, as to render unnecessary a prolonged discussion of the law, and upon the authority of those cases, it may be stated that if the observation of the premises by the officers as disclosed by the application was sufficient to justify the belief in a rationally minded person that the law was there being violated, the existence of probable cause as contemplated by the statute is gratified. In the present case the affidavit shows that the premises were used as a residence and many persons on two succeeding afternoons were admitted, either singly or in pairs, at different intervals averaging five minutes apart, but no

admittance was made until a certain signal had been given and the party seeking admittance had been approved by some one inside, for in some cases persons seeking to enter were turned away. It is true that no watchers were observed on the outside, as in *Goodman v. State, supra,* but when it is considered that some one was on. the inside who must approve all who were admitted, the case for probable cause is strengthened quite as much as if watchers had appeared outside the premises. The further fact that it is common knowledge that persons in entering private homes are not subjected to such scrutiny as they were compelled to undergo in the present case in order to gain admittance, and that such numbers of them entered on the afternoons mentioned singly or doubly at different intervals are circumstances sufficient to cause a belief on the part of an officer in the exercise of an honest judgment that an offence was being committed within.

We have referred to 110 Jackson Place as a dwelling, and it is so described in the application for the search warrant. It was suggested in appellant's argument that the premises were used as a Democratic club, rather than as a residence. It is only sufficient to state that it appeared as a residence to the officers making the affidavit, and the record is devoid of any evidence that a Democratic club was conducted there. It is claimed that such an inference arises because of the presence in one of the desk drawers of an old certificate from the State Tax Commission showing the incorporation of a Democratic club, but there is no evidence that the premises were ever used by the club in any manner. We conclude, therefore, that the application for the search warrant sufficiently showed probable cause, and that the warrant issued in pursuance thereof was valid, and, this being true, their production by the witness before the trial court was proper, since this was essential to enable the court to determine at the outset that Sergeant Amrein and his fellow officers were rightfully upon the premises. Until this question had been resolved affirmatively they

could not testify as to the observations they had made, nor what they found upon the premises. The introduction of the application and the search warrant were for no other purpose, and served none other than to enable the trial court to see that the officers had a right to be upon the premises in the execution of a valid search warrant. No error is therefore found in the trial court's rulings to which the first, second and third exceptions relate.

The fourth exception was reserved to the action of the trial court in permitting Sergeant Amrein to testify as to what was found in the basement of the adjoining premises, No. 112 Jackson Place. The officer had previously testified that on the afternoon of February 1st, armed with the search warrant, he and three fellow officers arrived at 110 Jackson Place; that he and Officer Gilmore went to the rear of the premises while the other two officers went to the front. After the witness and his companion had entered the yard and were near the rear of the house, they knocked on the door and upon one of the window shutters, the latter being both closed and covered from within by some material in such a manner as to prevent a person from the outside from seeing within the basement. Getting no response, Officer Gilmore knocked out the covered shutters and pushed them down. Then the witness and Gilmore observed a group of men in the basement rear of 110. Most of those went to the partition separating that property from 112, opened the partition, through which some of them passed to 112, closing the partition behind them. Those left in 110 went upstairs, leaving the basement of 110 vacant. Sergeant Amrein, by using a maul, knocked down the outside wooden door, whereupon he was confronted with a sheeted plate of some kind over another door. It required about twenty-five minutes to gain entrance through those two doors, and he was then in a small wooden shed facing another door leading into the basement. After some effort that door was knocked down and the entrance to the basement was effected. While the doors were be-

ing knocked down,. Officer Gilmore, who was looking through the shutter, observed the reinforced doors and saw those who did not enter into the adjoining basement run upstairs. Later on two of the latter returned and tried to close the shutters through which he was looking, next running to the wall and tearing down rundown sheets hanging upon the wall and later taking papers from the pay-off booth, placed all those articles in a stove and were burning them. The witness also observed them put the phones in the safe.

At the time Sergeant Amrein and Officer Gilmore first attempted to gain admittance to the rear of 110, Officers Stone and Smallwood had appeared at the front door of the premises. They stood in the vestibule and a woman came to the door asking who they were, and Stone testified, he informed her that they were "police" and requested admittance, whereupon she mumbled something which he did not understand, threw the bolt over the door and ran. When Sergeant Amrein finally entered the basement of 110, he and another officer located a false panel in the partition between 110 and 112. This was locked from the inside of 112, into which they had previously observed a number of the occupants of 110 entering.

At the time objection was made to what was found in the basement of 112, the court overruled it with the observation that so far a continuous operation between the two buildings had been shown, at least to the extent that one provided an escape from the other. The objection to the question as to what was found in the adjoining basement is, as we understand it, based upon these contentions, (a) the search warrant was not validly executed; (b) assuming the validity of the search warrant, it was not permissible under its authority to search adjoining premises which were not described in the warrant. The claim respecting the first contention is that, assuming the validity of the application for the search warrant and the validity of the warrant itself, it was not served in such a manner as to enable the State to offer in evidence the articles found, regardless of their nature. It

is contended that although, before breaking down the doors the officials were refused admittance, they were required to announce, not only that they were police officers, but that they were acting under a warrant which entitled them to search the premises. Section 259A of chapter 749, Acts of 1939 (Code 1939, art. 27, sec. 306), is silent as to the manner of executing a search warrant, but provides only that property seized in pursuance thereof may be disposed of according to law so long as it is property described in the warrant and there exists probable cause for believing the grounds on which the warrant was issued. *Cornelius on Search and Seizure*, (2nd Ed.), sec. 238, with reference to breaking doors in execution of a warrant, seems to lay down the rule that an officer, in executing a warrant to enter a house, which warrant is valid on its face, may break open the doors if denied admittance, but a demand is necessary prior to breaking doors when the premises are in charge of some one. The author concludes from New York cases cited by him, that when the warrant is regular on its face, the officer will be protected against an action for damages by the owner or occupant of the premises against him for breaking down doors. This rule would seem to be reasonable and to afford proper protection to the occupant of a dwelling or other premises, in the absence of any statute in Maryland making it illegal for an officer with a search warrant to break down doors until having announced that he possessed such a warrant.

Under the circumstances considered, we are of the opinion that the contention to the effect that the warrant was invalidly executed is without merit.

The second argument ignores the fact, as observed by the trial judge, that the flight of the persons from the basement of 110 to that of 112 through the partition was a continuous operation in their effort to thwart the officers in apprehending them, and in seizing the evidence to convict them of violating the law, since those executing a warrant have the right to prevent a removal of articles of an evidential nature during the progress of

the search. 56 *C. J.*, page 1242, par. 162, and *Marron v. United States,* 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; *Silverstein v. State,* 176 Md. 533, 6 A. 2nd 465; annotation, 74 *A. L. R.* page 1394. Furthermore, it is questionable that the status of appellants is such as entitles them to object to the admission in evidence of the articles found in the basement of 112 Jackson Place, there being no showing nor contention that any of them were the lawful occupants of those premises. It seems to be established that immunity from illegal search and seizure is a privilege personal to those whose rights have been infringed, and they alone may invoke it. See *Baum v. State,* 163 Md. 153, 161 A. 244.

The evidence was also objected to upon the ground that it was inadmissible against the appellant Nathan Friedman, who, it is said, was not shown by any testimony to have had any connection with the illegal operation. Friedman lived upon the second floor of 110, and during the search of the upper floors of the building was found in a locked room upon the second floor crouching against the wall. The other appellant, Frankel, lived on the first floor of 110, so that both appellants occupied parts of the building in the basement of which the illegal operation was conducted. There was also evidence which, if believed by the jury, would have enabled them to find that Frankel, the other appellant, and some of the traversers who have not appealed, were participating in the violation complained of. It cannot be said that testimony as to the character of articles found in the basement of 110 or 112 corresponding to those mentioned in the warrant was not relevant to the charge of the State against the traversers. The objection by all of them to such testimony was properly overruled. It was incumbent upon the particular appellant, Friedman, to suggest to the attention of the trial court the reasons why such testimony was inadmissible against him. This he failed to do at the time it was offered, and he cannot now for the first time ask this court to decide what should have been called to the attention of and decided

by the trial court. *Markley v. State*, 173 Md. 309, at page 318, 196 A. 95. No error was, therefore, committed by the trial court in overruling appellants' objection to the question as to the character of articles found in the basement of No. 112 Jackson Place.

After the trial court had overruled the objection of appellants to permitting the witness to state what he found in the basement of 112, Sergeant Amrein was requested to proceed. Having answered that he observed a table on which were certain papers, some of them plain, and some of them with pencil or crayon lines across them, appellants' counsel renewed their objection, whereupon the trial court remarked: "If you want, I'll take all the evidence subject to exception." To this, their counsel replied, "All right."

The witness further testified that those particular papers with lines on them were used as "rundown" sheets in bookmaking establishments; that by this term he meant a place to put the name of the track where the horses were running, the names of the horses, jockeys, weights of jockeys and probable odds, which went on a board located upon the wall; that each of those classified one race at one track, and as he entered 110 he noticed, on a cardboard, papers of the same size with writing upon them in crayon; that he also, while in the yard, noticed Frankel and Schindler coming down the stairs from 110; he also noticed that rundown sheets he had previously seen on the cardboards were missing, and heard the stove lid put back on the stove; that on the wall of 110 Jackson Place he observed a reflector, which he produced, that was connected up and shining upon the cardboards, and above the tops of the cardboards, fastened to the wall with thumb tacks, there was a card which read "We take no field bets." He further produced a bell and button which he stated he found under a plank of wood near the first door he had broken down; that upon pressing it, it rang a buzzer in a cage located in the basement of 110, and when they arrived at 110 there was a fire in the stove. The articles which the

witness produced were offered in evidence and he testi-
fied as to his observation of others, all of which answered
the description in the search warrant as to what he
should seize. He further stated that one of the doors
leading to the basement of 110 had a peep-hole in it, with
a slide behind the peep-hole which could be worked only
from the inside of the room, and the slide was moved to
observe who was on the outside of the door before it was
opened.

During the course of Sergeant Amrein's testimony,
as above recited, there appears in the record what are
termed Exceptions 5, 6, 7, 8, 9, 10 and 11. As has been
observed, at the time counsel for appellants objected to
the witness answering what he had observed in the base-
ment of 110 Jackson Place, it was distinctly understood
between the trial court and appellants' counsel that all
the evidence would be taken subject to exception. Sub-
sequently, their counsel objected to another question and
the trial judge stated that he would take it subject to
objection, and counsel again replied, "All right, sir."
This is now characterized as Exception 6, and what is
now termed Exception 7 was occasioned when the State
offered in evidence certain paraphernalia, which offer
was objected to by appellants, but admitted subject to ex-
ception. It cannot, therefore, be said that what are
characterized as Exceptions 5, 6 and 7 are properly be-
fore us, since in order to get the benefit of those rulings
it was necessary for appellants at some later stage of the
trial to renew their objections to the questions referred
to, and this is not shown by the record to have been done.

The eighth exception was taken when the trial court
overruled appellants' motion to strike out the testimony
of Sergeant Amrein with reference to 110 Jackson Place,
and the trial judge suggested that technically there
should be two motions, one to suppress, and the other
after that motion had been overruled. He then asked if
it could be stipulated that evidence should be taken on
both grounds and avoid taking it twice, and this plan was
consented to by appellants' counsel and the State. The

court subsequently overruled the motion to suppress. Without unduly prolonging this opinion, it is sufficient to state that probable cause was shown in the first instance for the issuance of the search warrant, and since the articles seized corresponded to those named in the warrant, and the observations of the officer as to paraphernalia likewise corresponded to paraphernalia which under the warrant he had authority to seize, the motions were properly overruled.

What is termed the ninth and eleventh exceptions need not be discussed, except to add that they are not before us, since, with reference to what is characterized as the ninth, it plainly appears from the record that appellants' counsel objected to a question designed to show there was adequate basis for the application for the warrant, and their counsel had already stipulated that the evidence should be taken only once for all purposes, while, with regard to the eleventh exception, so called, the record plainly shows that the trial court ruled with appellants and no exception was asked for or reserved by them.

This leaves only the tenth exception for consideration. Officer Germack, who was testifying for the State, was detailing his observations of the rear of 110 Jackson Place, and before he finished his sentence, appellants' counsel stated: "I object. That is certainly vicious." After discussion, the trial court overruled the objection, stating counsel would have the witness on cross-examination and be afforded an opportunity to test the credibility of his statement as to whether he could see the rear of 110 Jackson Place from a house in which, according to his testimony, he was stationed on Broadway. The ruling was correct, because the witness was stating facts which were relevant and admissible to show guilt on the part of those on trial.

Since in our opinion an examination of all the exceptions before us discloses no errors in the rulings complained of, the judgments appealed from will be affirmed.

*Judgment in No. 27 affirmed, with costs.*
*Judgment in No. 28 affirmed, with costs.*