FISCHER *v.* STATE

[No. 183, October Term, 1949.]

478

*Decided June 7, 1950.*

, The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Bennett B. Cockey* and *W. Albert Menchine,* with whom were *John D. C. Duncan* and *Michael Paul Smith* on the brief, for appellants.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Francis T. Peach, State's Attorney for Baltimore County, Johnson Bowie* and *John E. Raine, Jr., Assistant State's Attorneys for Baltimore County* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Henry Fischer, Brent L. Atkins, Bradford H. Houck and Earl A. Reich were convicted by the Circuit Court for Baltimore County of operating an establishment for gambling on horse races. Code 1939, art. 27, sec. 291. They are appealing here from the judgments of conviction.

The convictions were obtained upon evidence seized by officers of the Baltimore County Police Department on the second floor of the building at 7714 Harford Road

in Parkville on the afternoon of November 3, 1949. Appellants rely on the Bouse Act, which directs that in the trial of misdemeanors no evidence is admissible where it has been procured as the result of illegal search or seizure. Code Supp. 1947, art. 35, sec. 5. It is conceded that Fischer, the operator of the tavern on the first floor of the building, was the lessee of the entire building; but it is contended that, because he had subleased the second floor to Houck, the operator of the bookmaking establishment, the search of that floor by the officers without a warrant was illegal.

There are two entrances to this building, both of which are open to the public. One is the front door of the tavern. The other is to a vestibule, from which a person can either go up the steps or enter the restaurant. The police officers entered the front door of the tavern, and walked through the tavern and restaurant to the vestibule. Corporal Kessler testified that as he was walking up the steps to the second floor, he "heard persons mumbling and heard the loud speakers talking." He said that the door at the top of the stairway was "wide open," and from the doorway he saw about 25 or 30 people sitting at two tables and looking at sheets of paper and listening to announcements of the races broadcast by loud speaker. From the tables the officers seized scratch sheets and copies of the Daily Racing Form.

There were two small windows and a door to a smaller room. A sign above one of the windows contained the notice: "Parlays will not be paid until all races are over." Upon entering the small room the officers found Houck and Reich, each sitting at a desk. Houck admitted that he was the operator of the establishment and that Reich was his employee. On the desks the officers found money, scratch sheets and betting tickets. Two telephones were continually ringing. Within less than a half hour 14 people phoned to make 52 bets on 52 horses.

It is undisputed that the police had the right to inspect and search Fischer's Tavern without a warrant, inas-

much as the owner of the building had given consent to inspection and search of all parts of the building in which the liquor business is to be conducted, as a prerequisite to the issuance of the liquor license. The Alcoholic Beverages Law provides that every application for a license shall contain a statement executed and acknowledged by the owner of the premises in which the business is to be conducted assenting to the granting of the license, and authorizing certain officers "to inspect and search, without warrant the premises upon which the business is to be conducted, and any and all parts of the building in which said business is to be conducted, at any and all hours." Code Supp. 1947, art. 2B, sec. 44 (17). Such consent to inspection and search of premises is valid. *Zukowski v. State,* 167 Md. 549, 555, 175 A. 595.

In *Miller v. State,* 174 Md. 362, 198 A. 710, the defendant occupied an apartment on the third floor of a building, formerly known as the Forbes Hotel, in Baltimore. The police entered his apartment without a warrant and seized some of his property. It was shown at the trial that the lessee of the first floor of the building had obtained a license to operate a saloon there with the owner's consent to inspection and search of the premises. But the Court said that the State, in requiring consent to inspection and search of premises without a warrant, under the guise of regulating the liquor traffic, cannot override the provisions designed to protect the people against unreasonable searches and seizures by authorizing search without a warrant of premises not occupied by the owner or the licensee, but by a tenant who is not engaged or employed in the liquor business and has no connection with it.

In the case at bar it cannot be said with reason that the owner of the building had not given consent to search of the second floor merely because Fischer had subleased that floor to Houck, who used it for bookmaking and not for the liquor business. That contention is not tenable because Fischer not only knew that Houck was

violating the criminal law, but actually participated in the criminal business. As proof of this fact, the State introduced, among the evidentiary articles seized by the police, a ledger containing entries of deposits in two Baltimore banks; and then showed by employees of the banks that the deposits were made by Fischer and Houck jointly and that withdrawals could be made only by checks signed by both. In addition, there can be little doubt that the gambling establishment helped to bring business to the bar and restaurant. For instance, one of the patrons of the bookmaking establishment testified that some of the gamblers were drinking beer at the time of the raid, although he refrained from saying where the beer was purchased.

In *Gorman v. State,* 161 Md. 700, 702, 158 A. 903, the police officer, suspecting a violation of the lottery law in the defendant's home, entered it without a warrant and seized some lottery slips and money lying on the table. Even though the front door was ajar and the officer merely "pushed it open and walked right in," nevertheless the Court ruled that there was an illegal search.

But that case also is readily distinguishable from the case before us. When the proprietor of a tavern participates in an unlawful gambling business on the premises, he waives his right to prevent the designated officers from entering the premises; and where such a place of business is entered by a police officer, whether in uniform or in plain clothes, with the view of ascertaining whether a bookmaking establishment is being conducted on the premises, the entry of the officer is not a trespass. *Silverstein v. State,* 176 Md. 533, 542, 6 A. 2d 465.

The arrests in this case were valid because the misdemeanors were committed in the presence of the police officers. The law is established that where a misdemeanor is committed within the view of a police officer, he may arrest the offender without a warrant. *Heyward v. State,* 161 Md. 685, 692, 158 A. 897; *Callahan v. State,* 163 Md. 298, 300, 162 A. 856. Moreover, an

officer without a search warrant has the right to search a person lawfully arrested while committing a crime, and also to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed. *United States v. Weeks,* 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834 Ann. Cas. 1915C, 1177; *Agnello v. United States,* 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; *United States v. Rabinowitz,* 339 U. S. 56, 70 S. Ct. 430, 433, 94 L. Ed.

For these reasons the property in question was procured by lawful search and seizure, and was accordingly admissible in evidence. The judgments of conviction will therefore be affirmed.

*Judgments affirmed, with costs.*