RUCKER *v.* STATE
BAILEY *v.* STATE
(Two Appeals in Separate Records)
[Nos. 21-22, October Term, 1950.]

*Decided November 15, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

Submitted on brief by *Joseph D. Winer* for the appellants.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *John H. T. Briscoe, State's Attorney for St. Mary's County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Joseph Edward Rucker and Samuel S. Bailey were separately indicted, tried and convicted in the Circuit Court for St. Mary's County on the charge of having lottery tickets in their possession. Code 1939, art. 27, sec. 411. The Court sentenced each defendant to serve in the Maryland House of Correction for a term of six months and to pay a fine of $100. The appeals are from the judgments of conviction.

Appellants and three other men were arrested by Sergeant Murray E. Jackson of the Maryland State Police on February 21, 1950, following an automobile accident near Hollywood in St. Mary's County. A Plymouth sedan with Virginia license tags had just run off the road and upset. When the police officer arrived on the scene, five men were near the car, but no one was inside. He inquired who the driver was. Rucker admitted that he was driving the car. He showed his driver's license and his motor vehicle registration card, which indicated that his address was Bowling Green, Virginia, and that he was the owner of the car. The officer looked into the car and saw numbers slips scattered around inside. Then, while the car was being pushed back upon its wheels, some of the numbers slips fell out on the road. The officer asked Rucker "what those numbers slips were doing in his car," and he replied only that "they must have been under the seat."

The officer then found in the car two paper bags containing a number of sealed envelopes. In the envelopes he found some more numbers slips and various amounts of money which corresponded with the amounts marked on the slips. In testifying about the envelopes, he gave the following description of the contents: "In addition to the amount of money in each envelope, there is a notation of a code number, and immediately below that the amount of money in the bag. The code number is the number of the writer who turns that particular envelope of money in."

The officer also found more than two hundred dollars in cash scattered inside the car. He thereupon placed the five men under arrest and took them to the county jail in Leonardtown. In the jail he searched them. Rucker had in his pockets some money and also a notebook which contained daily entries of code numbers and amounts of money dating from January 23 to February 21, 1950, which evidently were records of collections from various numbers writers. Bailey, one of the passengers in the car, had in his pockets some money and numbers slips.

The chief contention of appellants is that the numbers slips were inadmissible in evidence on the ground that the search and seizure were unlawful without a warrant. The Bouse Act, Code Supp. 1947, art. 35, sec. 5, makes inadmissible in the trial of misdemeanors any evidence procured by illegal search or seizure or by search and seizure prohibited by the Maryland Declaration of Rights. But the law is well settled that if a misdemeanor is committed in the presence or view of a police officer, he may arrest the offender forthwith without first having obtained a warrant to do so. In addition, when a lawful arrest is made, the arresting officer may search the offender and seize incriminating articles connected with the crime, either as its fruits or the means by which it was committed, found upon his person or within his use and immediate control or possession. *Heyward v. State*, 161 Md. 685, 692, 158 A. 897; *Callahan v. State*,

163 Md. 298, 300, 162 A. 856; *Silverstein v. State,* 176 Md. 533, 540, 6 A. 2d 465; *Fischer v. State,* 195 Md. 477, 74 A. 2d 34. In arresting a person engaged in unlawful possession or sale, the officer may seize books and papers which are a part of the outfit or equipment actually used to commit the offense and which, though not on the person of the one arrested, are in his immediate possession and control. *Maron v. United States,* 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231.

In *Blager v. State,* 162 Md. 664, 161 A. 1, the defendant had just stepped out of his automobile when he was accosted by a police officer who noticed a package in his overcoat pocket and asked to see it. The officer found that it contained lottery tickets. The Court held that though the lottery tickets were concealed in the package in the defendant's pocket, nevertheless the officer had not forced him to admit that he was committing a misdemeanor. The Court accordingly held that as soon as he showed the tickets, the commission of the crime was disclosed to the officer's view and the officer had the right to arrest him.

While the right of search and seizure incidental to a lawful arrest is not limited to a search of the person, the extent to which the search and seizure may go cannot be clearly defined from an abstract point of view, because it depends upon the court's interpretation of "immediate control" or "immediate surroundings" of the person arrested as applied to the facts of each case. However, in these cases we have no difficulty in determining that the numbers slips were found under the immediate control of defendants.

In the instant cases no coercion was used by the officer to discover that defendants had possession of numbers slips. The slips scattered inside the automobile could easily be seen. Some of the slips fell out of the car. As the misdemeanors were committed in plain view of the officer, the arrests were lawful. As the arrests were lawful, the officer had the right to make further searches either on the highway or at the jail. Under the cir-

cumstances the police officer was not required to obtain a warrant before making the arrests, because the violators of the law might have been allowed to escape before the warrant could have been obtained. Quoting Judge Pattison in *Heyward v. State,* 161 Md. 685, 693, 158 A. 897, 899, "In our opinion the law cannot be so impotent and ineffective in its operation."

Rucker, who was the second of these appellants to be tried, makes another contention. He says that at his trial Bailey swore that all of the numbers slips in the automobile were his. Bailey claimed that an automobile in which he was riding had broken down and that Rucker picked him up and gave him a ride, and just before the car ran off the road all of the numbers slips were in a paper bag beside him. After Bailey told this story, Rucker made the argument that there was no evidence to convict him, because (1) Bailey, who was convicted, testified that all of the slips belonged to him, and (2) it was no criminal offense to have the notebook. The trial judge said that he did not believe Bailey was telling the truth, and in any event the slips were in the automobile at least to some extent in joint possession of both of them. We agree that the judge was not required to believe the entire story told by Bailey. Rucker, the driver of the automobile, had possession of the book which was clearly connected with the slips. Moreover, the lottery statute makes it a crime for any person to have in his possession any book, list, slip or record (1) of the numbers drawn in any lottery, or (2) of any lottery ticket, or (3) of any money received or to be received from or for the sale of any lottery ticket. Code 1939, art. 27, sec. 411. As this Court said in upholding the validity of the statute in *Ford v. State,* 85 Md. 465, 480, 37 A. 172, 41 L. R. A. 551, the statute makes unlawful the mere possession of a book, list, slip or record irrespective of the purpose for which it may be held.

*Judgment in No. 21 affirmed, with costs.*
*Judgment in No. 22 affirmed, with costs.*