DELNEGRO ET AL. *v.* STATE
(Two Appeals in One Record)

[No. 148, October Term, 1950.]

*Decided May 24, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*William H. Collins* and *Frank M. Hall* for the appellants.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Carlyle J. Lancaster, State's Attorney for Prince George's County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Eleven defendants are appealing here from judgments of conviction entered against them in the Circuit Court for Prince George's County on an indictment charging that they promoted and were concerned in carrying on a lottery in violation of a statute. Laws of 1939, ch. 258, Code P. L. L. of Prince George's County, 1943 Ed., sec. 608.

On March 25, 1949, appellants and three other men and five women were arrested by deputies of the United States Marshal for the District of Columbia in the home of Mrs. Sadie E. Stanton at 4310 46th Street in Bladensburg. The deputies were armed with a search warrant issued by a United States Commissioner for the District of Maryland, and also a Federal warrant for the arrest of a man known as "Frankie" for violating the gambling laws of the District of Columbia. An Act of Congress provides that a United States Marshal and his deputies, in executing the laws of the United States within a State, may exercise the same powers which a sheriff of such State may exercise in executing the laws thereof. 28

U. S. C. A. sec. 549. However, in this case we do not undertake to consider the legality of the search, the warrant for which was issued upon two affidavits, one by a woman that she had learned that lay-off bets were placed with a man known as "Frankie" by calling either one of two telephone numbers in the Washington exchange, the other by an employee of the telephone company that these two telephones were installed in the house at 4310 46th Street.

When the officers arrived at the front door of Mrs. Stanton's house, they found the screen door latched. They forced this open and then, after there was no response to knocks on the door, they broke one of the small panes of glass in the door and lifted the latch. Entering the house they met Mrs. Stanton, four other women, and Sterling D. Welch, one of the appellants. They then rapped on the heavily barred door to the gambling room and demanded admittance. In the gambling room the officers found William Lewis, alias Snags Lewis, John Ralph Mitchell and George P. Scott, and five of the appellants, Bernard J. Delnegro, Dean Johnson Kennedy, Gregory A. Segar, Ellis L. Salet, and Edward L. Hinkle, Jr. The officers found in the room four gaming tables, three telephones, a ticker tape, adding machines, paper bags, envelopes containing money, and numbers slips. The officers searched the men and seized a total of $27,000. The ticker tape was in operation, and the telephones were continually ringing. One of the deputies found that the calls dealt with the placing of bets.

While the officers were in the house, knocks were heard on the rear door at five different times. Each time a deputy opened the door and, on seeing a Negro holding a paper bag, asked him to come in. As each one entered, the deputy requested him to put the bag on the table and be seated. In each bag were lottery tickets and cash. One by one the Negroes, Frederick Sutton, Fulton Boyd Mitchell, Ralph Spottswood, Lonnie James Black and Ennis Wyche, were placed under arrest. The officers took all of the accused to the jail in Washington.

On May 3, 1949, the grand jury of Prince George's County found two indictments, one for operation of a lottery, the other for operation of a bookmaking establishment.

On October 31, 1950, defendants moved to quash the search warrant, to suppress the evidence obtained in the search and seizure, and to return the seized property. On December 8, 1950, the Court ordered that the evidence be suppressed as to Mrs. Stanton, owner of the house, and also as to Lewis, John Ralph Mitchell and Scott, lessees of the gambling room, but overruled the motion as to the other defendants.

On December 20, 1950, the two cases were consolidated for trial before the Circuit Court without a jury. At the close of the case defendants moved for a verdict of not guilty. On the first indictment the Court found appellants guilty and the other defendants not guilty. On the second indictment all of the defendants were acquitted.

Five of the appellants, Delnegro, Segar, Salet, Hinkle and Welch, were each sentenced to the Maryland House of Correction for two years and to pay a fine of $500. The five Negroes who came with the paper bags, Sutton, Fulton Boyd Mitchell, Spottswood, Black and Wyche, were each sentenced to the House of Correction for twelve months and to pay a fine of $250. Kennedy was sentenced to the House of Correction for two years.

*First.* Appellants contend that, since the Court ruled that the search and seizure were illegal, the evidence seized in the raid should have been suppressed as to all of the defendants. They relied on the the decision of the Supreme Court in *McDonald v. United States,* 335 U. S. 451, 69 S. Ct. 191, 93 L. Ed. 153, that material seized as the result of an illegal search cannot be introduced in evidence in a Federal case. However, the Supreme Court also said in *Wolf v. People of State of Colorado,* 338 U. S. 25, 69 S. Ct. 1359, 1364, 93 L. Ed. 1782, that in a prosecution in a State court for a State crime, the Fourteenth Amendment does not forbid the

admission of evidence obtained by an unreasonable search and seizure. Thus we consider the admissibility of evidence obtained in an illegal search and seizure in the light of the Maryland Constitution and statutes. Prior to 1929 it was held by this Court that where evidence offered in a criminal trial is otherwise admissible, it will not be rejected because of the manner of its obtention. *Meisinger v. State,* 155 Md. 195, 141 A. 536, 142 A. 190; *Heyward v. State,* 161 Md. 685, 158 A. 897; *Baum v. State,* 163 Md. 153, 161 A. 244. This is still the rule in prosecutions for felonies in this State. *Marshall v. State,* 182 Md. 379, 35 A. 2d 115. By the Bouse Act the Legislature of Maryland changed the rule for prosecutions for misdemeanors. That Act, passed as a result of objection to the Volstead Act, provides that any evidence procured by illegal search or seizure or by search and seizure prohibited by the Maryland Declaration of Rights is inadmissible in the trial of misdemeanors. Laws of 1929, ch. 194, Laws of 1947, ch. 752, Code Supp. 1947, art. 35, sec. 5. We have consistently held, however, that in order to complain of an illegal search of property a person must either own, lease, control, lawfully occupy, rightfully possess, or have an interest in the property. *Frankel v. State,* 178 Md. 553, 16 A. 2d 93; *Bevans v. State,* 180 Md. 443, 24 A. 2d 792; *Resnick v. State,* 183 Md. 15, 36 A. 2d 347; *Frank v. State,* 189 Md. 591, 56 A. 2d 810; *Lambert v. State,* 196 Md. 57, 75 A. 2d 327.

In contrast to Mrs. Stanton, owner of the house, and Lewis, John Ralph Mitchell and Scott, lessees of the gambling room, appellants were invitees. Immunity from illegal search and seizure is a privilege personal to those whose rights have been infringed, and they alone may invoke it. The right cannot be invoked by invitees. As appellants failed to show that they were occupants of the property or had any interest in it, the material seized in the raid was admissible in evidence against them.

*Second.* Welch, who was found in the living room, claims that a statement which he made at the time of the arrest to Deputy Marshal Cornelius was a confession, and should not have been admitted in evidence, since the proper foundation was not laid for it. The deputy testified that he asked Welch what he was doing in the house. He replied that he was working there. The deputy then asked him what kind of work he was doing, and he replied: "I work on the adding machines."

It is true that when objection is made the burden of proof is on the State to show that the confession of an accused was freely and voluntarily made and was not obtained by improper inducements. *Lubinski v. State,* 180 Md. 1, 22 A. 2d 455; *Peters v. State,* 187 Md. 7, 48 A. 2d 586; *Wood v. State,* 192 Md. 643, 649, 65 A. 2d 316, 319. But Welch's reply to the deputy was manifestly voluntary and was an admission, not a confession of guilt. An admission is an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends to establish the ultimate fact of guilt. A confession implies that the matter confessed constitutes a crime. The rule for the admission of a confession in evidence is not applicable to an admission. *Commonwealth v. Dascalakis,* 243 Mass. 519, 137 N. E. 879, 38 A. L. R. 113.

*Third.* Delnegro, Kennedy, Segar, Salet, Hinkle and Welch contend that the State produced no evidence to show that they were violating the law. They claim that there was no evidence against them except the fact that they were in the raided house. But the house was barricaded, and it seems entirely clear that they were in the house for the purpose of promoting the gambling establishment. A similar conclusion was reached in *Lambert v. State,* 196 Md. 57, 69, 75 A. 2d 327, 332.

*Fourth.* Sutton, Mitchell, Spottswood, Black and Wyche contend that their arrest without a warrant was unlawful, and that the search of their paper bags was also unlawful, and therefore the evidence against them should have been suppressed. It is an accepted

rule that a police officer has no authority to arrest on the mere belief that a person has been guilty of a misdemeanor, if such belief has no foundation in fact. In *Walker v. State*, 195 Md. 412, 73 A. 2d 508, the Court held that if an officer sees a pasteboard box in an automobile, but cannot tell from its appearance what it contains, and he searches the box and finds it contains numbers slips for carrying on a lottery, such search is illegal. But that case is not parallel to the case at bar. Here each of the five Negroes knocked on the rear door, which was heavily barred and had a lookout window. Each Negro carried a paper bag. The deputy could see from the appearance of the bag that it contained lottery tickets and money. The fact that the Negroes were bringing the bags to the gambling room showed that they were messengers for the gambling business. We find that these facts showed that the Negroes were committing a misdemeanor in the presence of the officers in carrying the lottery tickets and money to promote the gambling operation, and therefore the action of the deputies in making the arrest and seizure was lawful. *Heyward v. State*, 161 Md. 685, 692, 158 A. 897; *Callahan v. State*, 163 Md. 298, 300, 162 A. 856; *Fischer v. State*, 195 Md. 477, 481, 74 A. 2d 34, 36.

*Fifth.* Appellants urge that the sentences imposed upon them constituted cruel and unusual punishment. The Maryland Declaration of Rights contains two prohibitions against cruel and unusual punishment. Article 16 declares that "* * * no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter." Article 25 provides: "That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted by the Courts of Law."

The term "cruel and unusual punishment" has usually been understood to mean barbarous punishment by torture. In commenting on Article 25 of our Declaration of Rights, Judge Bryan said: "This article is copied almost word for word from Statute I, W. & N., Chapter

2, which was passed immediately after the expulsion of the Stuarts. * * * History informs us that it was intended by the supreme legislative power as a solemn condemnation of the arbitrary and oppressive proceedings which had taken place in the Courts during the preceding reigns." *Mitchell v. State,* 82 Md.ᐟ 527, 532, 533, 34 A. 246, 247.

Justice Story, commenting similarly on the Eighth Amendment, said: "This is an exact transcript of a clause in the bill of rights framed at the Revolution of 1688. The provision would seem to be wholly unnecessary in a free government, since it is scarcely possible that any department of such a government should authorize or justify such atrocious conduct. It was, however, adopted as an admonition to all departments of the national government, to warn them against such violent proceedings as had taken place in the arbitrary reigns of some of the Stuarts." 2 Story on the Constitution, sec. 1903.

The Supreme Court of Indiana observed that the word "cruel," considered in reference to the time when it was included in the Bill of Rights, meant such punishment as the whipping post, the pillory, burning at the stake, and breaking on the wheel, and that the term "cruel and unusual punishment" does not forbid legislation providing imprisonment for life or for years, or the penalty of death by hanging or electrocution. *Hobbs v. State,* 133 Ind. 404, 32 N. E. 1019, 1021, 18 L. R. A. 774. On the other hand, the Supreme Judicial Court of Massachusetts expressed the opinion in *McDonald v. Commonwealth,* 173 Mass. 322, 53 N. E. 874, 73 Am. St. Rep. 293, that imprisonment in the state prison for a long term of years might be so disproportionate to the offense as to constitute a cruel and unusual punishment.

In any event, we disclaim any right to oppose the judicial power against the legislative power to define crimes and to fix their punishment, except where the power of the Legislature encounters in its exercise a constitutional prohibition, and in such a case an im-

perative duty is invoked. The Act of 1939, under which appellants were tried and convicted, provides that any person violating the Act in Montgomery County or Prince George's County shall upon conviction be punished by a fine of not more than $1,000 or by imprisonment for not more than three years, or by both fine and imprisonment. In this case the Court imposed sentences which were below the maximum punishment prescribed by the statute. Therefore, we must reject the contention that the sentences constituted cruel and unusual punishment.

Finding no reversible error in the rulings of the trial Court and no illegality in the sentences imposed upon appellants, we will affirm the judgments appealed from.

*Judgments affirmed, with costs.*