## SCARLETT *v.* STATE

[No. 57, October Term, 1952.]

312

*Decided January 9, 1953.*

The cause was argued before DELAPLAINE, COLLINS and HENDERSON, JJ.

*R. Palmer Ingram* and *Malcolm J. Coan,* for appellant.

*Kenneth C. Proctor,* Assistant Attorney General, with whom was *Edward D. E. Rollins,* Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *J. Harold Grady,* Assistant State's Attorney, on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Austin Scarlett, a Negro, of Baltimore, was tried in the Criminal Court of Baltimore in December, 1950, on three indictments charging violations of the lottery laws. He was acquitted of those charges. In December, 1951, he and Harry Gross and Horace B. Cann were tried on an indictment charging that on January 1, 1947, and thence continually until August 20, 1951, they unlawfully conspired together and with certain other persons to violate the lottery laws of the State of Maryland. The jury found Scarlett and Gross guilty, and Cann not guilty. In February, 1952, the Supreme Bench of Baltimore City granted Scarlett and Gross a new trial. At the second trial in March, 1952, the jury found Scarlett guilty, and Gross not guilty. The Court thereupon sentenced Scarlett to imprisonment in the Maryland Penitentiary for a term of seven years and to pay a fine of $2,000. He has appealed here from the judgment of conviction.

On August 10, 1950, Officer Allen Carey, of the Baltimore Police Department, while watching the residence of the Wilkes family at 604 North Arlington Avenue, saw appellant enter at 12:50 p.m. Shortly afterwards two automobiles stopped nearby. One of them belonged to appellant. The driver got out, carrying a cigar box and a brown paper bag, and entered the house. A short time later he came out with the box and the bag, entered the car and drove away. Officer Carey kept watch an hour longer, but did not see appellant leave the house.

On August 11 Captain Alexander L. Emerson, after obtaining a search warrant, entered the house and found in the dining room an adding machine and some lottery slips. On the second floor he found in a wardrobe over 1,000 lottery slips and $860.81 played on them. Thomas Wilkes pulled up from behind a sofa 186 lottery slips and $151 played on them. Captain Emerson also seized a pocketbook, which belonged to appellant, from an 18-year-old son of Mabel Wilkes.

On August 12 Captain Emerson obtained a warrant for the arrest of appellant for violating the lottery statute, and on that day entered appellant's home at 2501 McCullough Street and placed him under arrest. In the living room he seized some envelopes containing lottery slips. On the second floor he seized a lottery slip and $17.40. In the basement he seized two adding machines.

Cann testified that Gross informed him that appellant was in the numbers business and wanted him to write numbers, and that before he was caught on June 29, 1951, he wrote numbers for appellant. He also testified that when he was arrested appellant directed him to the office of a certain attorney who would represent him, and promised him that if he was given a prison sentence he would pay him $40 a week during his imprisonment. He further testified that in July, 1951, he was found guilty and was sentenced to the Maryland House of Correction for six months and to pay a fine of $750, but appellant

failed to keep his promise, and for that reason he decided to expose to the Court that appellant had been his backer.

*First.* Appellant challenges the validity of the indictment. One ground of attack is that it does not charge the object of the conspiracy with sufficient particularity, inasmuch as the lottery statute, Code 1951, art. 27, secs. 423-438, sets forth different specific offenses, such as the sale of lottery tickets, keeping a house, office or other place for the purpose of selling lottery tickets, and permitting any house or office to be used for the sale of lottery tickets. A similar contention was made in *Hurwitz v. State*, 200 Md. 578, 92 A. 2d 575, and *McGuire v. State*, 200 Md. 601, 92 A. 2d 582. The Court held in those cases that the evident meaning of the words "to violate the lottery laws of the State" is to participate in the conduct of a lottery, and therefore an indictment charging a conspiracy to violate the lottery laws of the State sufficiently charges a crime. We re-affirm those decisions.

Appellant also attacks the indictment on the ground that the object of the conspiracy, alleged to have continued nearly five years, from January 1, 1947, to August 20, 1951, was in fact not inherently continuous. He claims that any participant in the conspiracy could withdraw from it at any time. He also suggests that Edgar Wilkes testified that he participated only in 1949 and 1950, while Cann testified that he participated only a few months prior to his arrest on June 29, 1951. The argument seems to be that the conspiracy was complete on the day defendants were charged to have first conspired, January 1, 1947, and that a conspiracy is not a continuing offense in such a sense that each overt act will remove the bar of the statute of limitations against the original conspiracy, and in order to avoid the bar the indictment must charge a conspiracy and an overt act within the limitation period.

It is true that in Maryland all prosecutions for the crime of conspiracy must be commenced within two years after the commission of the offense. Code 1951, art.

27, sec. 46. However, where a conspiracy contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, such continuous co-operation is a single conspiracy, rather than a series of distinct conspiracies.

In *United States v. Kissel*, 218 U. S. 601, 31 S. Ct. 124, 126, 54 L. Ed. 1168, where the indictment charged an unlawful conspiracy in restraint of trade in refined sugar on December 30, 1903, and continuing from that day until July 1, 1909, the defendants argued that the alleged conspiracy was a completed crime as soon as it was formed, and that a plea was proper to show that the statute of limitations had run. In rejecting that argument, Justice Holmes, speaking for the Court, said: "A conspiracy to restrain or monopolize trade by improperly excluding a competitor from business contemplates that the conspirators will remain in business, and will continue their combined efforts to drive the competitor out until they succeed. If they do continue such efforts in pursuance of the plan, the conspiracy continues up to the time of abandonment or success. A conspiracy in restraint of trade is different from and more than a contract in restraint of trade. A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract, but is a result of it. The contract is instantaneous, the partnership may endure as one and the same partnership for years. A conspiracy is a partnership in criminal purposes. That as such it may have continuation in time is shown by the rule that an overt act of one partner may be the act of all without any new agreement specifically directed to that act."

In *Archer v. State*, 145 Md. 128, 147, 125 A. 744, the Court of Appeals, in accord with the view expressed by the Supreme Court, held that, although the crime of conspiracy is completed when the unlawful agreement is reached, it is not then exhausted in the sense that the

statute of limitations cannot be tolled by the commission of a subsequent overt act. We reaffirm that proposition.

*Second.* Appellant contends that the lottery paraphernalia seized in his home were procured unlawfully, and hence were inadmissible in evidence under the Bouse Act, Code 1951, art. 35, sec. 5, which makes inadmissible in the trial of misdemeanors any evidence procured by illegal search or seizure or by search and seizure prohibited by the Declaration of Rights of this State. We find no support for that contention. The general rule of the common law is that, in order to prevent illegal restraint for trivial causes, no arrest may lawfully be made for a misdemeanor, unless it is committed in the presence of the arresting officer, or until a warrant has been issued by a magistrate. Before issuing a warrant the magistrate should examine the applicant on oath as to the alleged crime, and satisfy himself that there is such probable cause of guilt as would ordinarily induce a prudent man to suspect the guilt of the accused. In this case the warrant for the arrest of the accused was obtained from a regularly appointed police justice in Baltimore City with jurisdiction of the subject matter, and it was valid on its face. The law is established that when a lawful arrest is made, the arresting officer may search the accused and seize incriminating articles connected with the crime, either as its fruits or the means by which it was committed, found upon his person or within his use and immediate control or possession. *Callahan v. State,* 163 Md. 298, 162 A. 856; *Silverstein v. State,* 176 Md. 533, 540, 6 A. 2d 465; *Johnson v. State,* 193 Md. 136, 155, 66 A. 2d 504; *Fischer v. State,* 195 Md. 477, 74 A. 2d 34; *Rucker v. State,* 196 Md. 334, 76 A. 2d 572; *Curreri v. State,* 199 Md. 54, 85 A. 2d 454.

Appellant further urges that the only basis for the issuance of the warrant by the magistrate was the fact that the policeman had found his pocketbook in the house where the gambling business was being conducted. We do not know exactly what the policeman swore to

before the magistrate. In any event, we are certain that the finding of the pocketbook was not all that the policeman had to warrant his belief that appellant was guilty. For instance, he had found that appellant frequently visited the house, and on one particular occasion his automobile was parked nearby and the driver got out and entered the house carrying a cigar box and a paper bag. Inasmuch as it has not been shown that the officer did not have reasonable ground for belief in the guilt of the accused, the Court cannot hold that the arrest was unlawful.

*Third.* Appellant contends that the articles seized in the house on Arlington Avenue were not admissible in evidence, because he had been acquitted in December, 1950, of the charges of violating the lottery laws on August 10, 11 and 12, 1950, and the crux of those cases was identical with the crux of the case at bar. The law that no person shall be put in jeopardy twice for the same offense forbids a second trial for the same offense whether the accused was convicted or acquitted at the former trial. But it is beyond question that an acquittal of a particular crime does not bar a subsequent prosecution for a conspiracy to commit the crime. *Sealfon v. United States,* 332 U. S. 575, 68 S. Ct. 237, 92 L. Ed. 180. For example, in *Gilpin v. State,* 142 Md. 464, 121 A. 354, this Court held that where the felony named in a previous indictment, under which the defendant was acquitted, was robbery, it could not be claimed that the misdemeanor of conspiracy to rob, of which the defendant was subsequently convicted, was merged in such alleged felony, the crime of conspiracy to rob being an offense separate and distinct from that of robbery.

It is conceded, of course, that the doctrine of *res judicata,* which precludes relitigation of the same factual issues in any subsequent trial, applies to criminal as well as civil proceedings and operates to conclude those matters in issue which the verdict determined although the offense is different. *State v. Coblentz,* 169 Md. 159,

164, 180 A. 266. Appellant relied on the statement of Justice Black in his concurring opinion in *United States v. Williams,* 341 U. S. 70, 71 S. Ct. 581, 590, 95 L. Ed. 758, 769, that he was convinced from the records that the principle of *res judicata* should have barred the Government from trying the defendants on the second indictment for conspiracy. But Justice Black made it plain that "the broad scope of the facts found adversely to the Government in the first trial barred a conviction of the five defendants on the second trial because there is no evidence that they conspired except insofar as the unlawful agreement can be inferred from their having participated in some way in the substantive crime."

In the case before us, on the contrary, it is undisputed that the original charges of violating the lottery laws, of which appellant was acquitted in December, 1950, applied only to the period of August 10, 11 and 12, 1950; whereas the articles found in the house on Arlington Avenue on August 11 and those found in appellant's home on August 12 were admitted in evidence merely to supplement other evidence to prove that he had conspired with others to violate the lottery laws from January 1, 1947, to August 20, 1951. We cannot agree with appellant that his acquittal of the charges of violating the lottery laws on the three specified days barred the use of evidence obtained on those days to substantiate the charge of conspiracy.

*Fourth.* Appellant contends that there was no admissible evidence legally sufficient to justify submission of the case to the jury. While the Court of Appeals now has the constitutional authority to pass upon the sufficiency of the evidence to sustain a conviction in a criminal case tried before a jury, this Court will not inquire into or measure the weight of the evidence, and will not reverse the judgment if there is any proper evidence before the jury on which to sustain a conviction. *Wright v. State,* 198 Md. 163, 81 A. 2d 602; *Shelton*

*v. State,* 198 Md. 405, 84 A. 2d 76; *Yanch v. State* 201 Md. 296, 93 A. 2d 749.

As we have stated, the lottery paraphernalia which the police seized in both houses were admissible in evidence. Some of these paraphernalia indicated that appellant was connected with the lottery operation. In addition, his accomplices testified that they had worked for him. Cann testified that appellant had employed him to pick up numbers for a regular salary of $25 a week, and had even promised to pay him while he was in the House of Correction. It is clear that the evidence was legally sufficient to sustain the conviction.

*Fifth.* Appellant contends that the sentence of imprisonment for the period of seven years, which the Court imposed upon him, was an abuse of judicial discretion. We emphasized in *Delnegro v. State,* 198 Md. 80, 81 A. 2d 241, that the Court of Appeals will not oppose the judicial power against the legislative power to define crimes and to fix their punishment, except where the power of the Legislature encounters in its exercise a constitutional prohibition, and in such a case an imperative duty is invoked. The Legislature has provided that every person convicted of the crime of conspiracy shall be liable to be punished by a fine of not exceeding $2,000 or imprisonment for not more than ten years, or both, in the discretion of the Court. Laws 1927, ch. 651, Code 1951, art. 27, sec. 46. The Court below imposed upon appellant a sentence considerably below the maximum punishment prescribed by the statute.

Appellant points out that the maximum punishment for first conviction of the Maryland lottery law is imprisonment for one year. He then praises the Federal law, which provides that the punishment for conspiracy to commit any offense against the United States is a fine of not more than $10,000 or imprisonment for not more than five years, or both; but if the offense, the commission of which is the object of the conspiracy,

is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor. 18 U. S. C. A. sec. 371. Whether or not the proviso in the Act of Congress has merit, the fact remains that the Maryland Code does not contain such a proviso.

Finding no reversible error in the rulings of the trial Court or any illegality in the sentence, we will affirm the judgment appealed from.

*Judgment affirmed, with costs.*