## DAVIDS *v.* STATE

[No. 38, October Term, 1955.]

*Decided December 2, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Austin W. Brizendine,* with whom was *John Grason Turnbull* on the brief, for the appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, John E. Raine, Jr., State's Attorney for Baltimore County,* and *Frank H. Newell, III, Assistant State's Attorney,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Alexander Davids has appealed here from his conviction by the Circuit Court for Baltimore County, sitting without a jury, on a criminal information charging him with violating the statute making it unlawful to make or sell a book or pool on the result of any horse race. Code 1951, art. 27, sec. 306.

Appellant was placed under arrest on March 2, 1955, in a tavern known as Roadside Inn on South Marlin

Avenue by Officer Gilbert L. Deyle, Captain of Detectives in the Baltimore County Police Force. When Captain Deyle and two police sergeants entered the tavern, they saw the bartender behind the bar and several persons sitting in front of the bar. At the end of the barroom there was a partition, and several feet beyond the partition was the entrance to the kitchen. Just as Captain Deyle was approaching the partition someone shouted "Al," and appellant appeared in the doorway of the kitchen. Captain Deyle identified himself and held appellant at the doorway while the sergeants went into the kitchen and thence into the living room.

In the living room was a small table on which were a telephone, an Armstrong scratch sheet and race bet slips. Returning to the doorway where Captain Deyle was standing with appellant, the sergeants displayed the scratch sheet and the slips. The Captain thereupon asked appellant what he was doing in "this sort of business." His only reply was: "Let me go and everything will be all right." Instead the Captain placed him under arrest and thereupon searched him. He found in his pants pocket $270 in cash and two race bet slips. Written on each slip was the name of a horse running on that day. The officers promptly took appellant to the police station and charged him with violation of the bookmaking law.

It is conceded that the police officers had no search warrant or warrant of arrest. However, the officers had the right to inspect and search the tavern without a search warrant. It was stipulated that a beer, wine and liquor license had been issued to Ida Mae Wise, the owner of the tavern. Under the Maryland Alcoholic Beverages Law, any peace officer of any county is authorized to inspect and search, without warrant, at all hours, any building in that county in which any alcoholic beverages are authorized to be kept or sold under a license issued under the provisions of that law. Code Supp., 1955, art. 2B, sec. 179. Under this statute the tavern owner's assent to inspection and search of the premises is valid, and police officers have the authority to enter the tavern and

conduct a search of the premises without a warrant. *Zukowski v. State,* 167 Md. 549, 555, 175 A. 595. However, this statute does not authorize officers to search patrons found therein. *Mason v. Wrightson,* 205 Md. 481, 109 A. 2d 128.

Appellant's contention on this appeal is that his arrest was unlawful, and that he was therefore searched unlawfully. The State, on the other hand, claims that his arrest was not unlawful because he committed a misdemeanor in the presence of the officers. We have repeatedly stated the law, upon which the State is relying, that where a misdemeanor is committed in the presence or view of a police officer, he may arrest the offender forthwith without first having obtained a warrant to do so, and after such arrest he may search the offender and seize the tangible evidence or instrument of the crime, whether on his person or within his use and immediate control or possession. *Callahan v. State,* 163 Md. 298, 300, 162 A. 856; *Fischer v. State,* 195 Md. 477, 74 A. 2d 34; *Rucker v. State,* 196 Md. 334, 76 A. 2d 572; *Scarlett v. State,* 201 Md. 310, 317, 93 A. 2d 753, *certiorari* denied 345 U. S. 955, 73 S. Ct. 937, 97 L. Ed. 1377; *Agnello v. United States,* 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145; *United States v. Rabinowitz,* 339 U. S. 56, 70 S. Ct. 430, 433, 94 L. Ed. 653.

It is stated in general terms that a crime is committed in the presence of an officer where his senses afford him knowledge that such is the fact. It is perfectly clear, however, that a crime, although not committed immediately within the vision of an officer, may be committed in his presence if it is committed within his hearing and so near that he cannot be mistaken as to the offender. If, for example, an officer hears uncommon and suspicious noises which he can readily locate, he has the right to investigate, and if it develops that a misdemeanor was actually committed, it may be considered as having been committed in his presence for the purpose of authorizing him to arrest the offender without a warrant. Accordingly an assault is committed in the

presence of an officer if he is near enough to hear the outcries of the victim and arrives immediately after the disturbance is over. In such a case, the officer, in determining whether or not a crime was committed in his presence, can act upon all the facts and appearances before him. Where some evidence of the commission of a misdemeanor reaches an officer through his senses, and it is augmented by other strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the misdemeanor is then being committed, he may act upon such information as being tantamount to actual knowledge that the misdemeanor is being committed.

The Kentucky liquor case of *Ingle v. Commonwealth,* 204 Ky. 518, 264 S. W. 1088, illustrates this rule. It appeared in that case that the Sheriff smelled liquor and saw fruit jars in the saddlebags on the defendant's horse and empty jars on the ground where men were sitting. It was held by the Kentucky Court of Appeals that the Sheriff was justified in believing that the defendant was committing in his presence the misdemeanor of possessing and transporting whiskey, and therefore he had the authority to search the defendant's saddlebags.

*Silverstein v. State,* 176 Md. 533, 6 A. 2d 465, is another illustration of the rule. There one of the policemen who had been detailed to investigate the defendant's store entered it by a door which was open to the public. The policeman saw a clerk writing in a book, but when the defendant shouted "Watch out!" the clerk dropped the book behind the counter. Shortly afterwards the clerk told another policeman that he had been writing numbers for the defendant. The Court of Appeals there held that it was the duty of the officers to arrest the defendant as a violator of the gambling law, as the facts and circumstances were such as to justify a prudent man in believing that both the clerk and the proprietor of the store were committing a misdemeanor in the presence of the officers.

It is equally clear, however, that an officer without a warrant has no authority to arrest any person for a misdemeanor, not committed in his presence or view, upon mere suspicion or belief that he is guilty. An officer without a warrant should not make an arrest for a misdemeanor unless his judgment is based upon personal knowledge acquired at the time through his senses or inferences properly drawn from the testimony of his senses, and the circumstances are such that they would justify a person of ordinary prudence in believing that the suspected person is committing a misdemeanor. *Griffin v. State,* 200 Md. 569, 92 A. 2d 743; *Stacey v. Emery,* 97 U. S. 642, 24 L. Ed. 1035; *Garske v. United States,* 8 Cir., 1 F. 2d 620; *Peru v. United States,* 8 Cir., 4 F. 2d 881, 883.

Thus in *De Angelo v. State,* 199 Md. 48, 85 A. 2d 468, where the defendant came into a private dwelling in which the only suspicious circumstance was the presence of a lottery, and he gave no explanation of his presence there, it was held that there was no reasonable ground to believe that he was participating in the lottery, as there could be many reasons why he was lawfully in the dwelling.

In the present case it is plain that appellant did not commit any criminal offense in the presence or in the view of the police officers. It is true that appellant came out of the kitchen, and that the officers found a scratch sheet and race bet slips in the room adjoining the kitchen. Hence, it was natural that the officers should be suspicious that he had something to do with the bookmaking. However, these facts did not show that he was committing a misdemeanor in their presence or view. The State relied on the fact that appellant appeared at the kitchen door when someone called for "Al." But that fact also was insufficient to show that appellant was committing a misdemeanor in the presence or view of the officers. There is some plausibility in the suggestion of appellant's counsel that the call did not at least seem to worry appellant, if he left the gambling paraphernalia

on top of the table and calmly appeared in the doorway.

It thus appears that the officers did not know that appellant was in the living room on that day. The officers entered the tavern at about 2:05 p.m., and they admitted on the witness stand that they did not know who was in the living room at any time between 1 and 2 p.m. They also admitted that the telephone did not ring while they were in the tavern. They further admitted that there were five or six different handwritings on the race bet slips, and none of the handwriting was identified as the handwriting of appellant.

· The Bouse Act provides that no evidence shall be deemed admissible in misdemeanor cases where it has been procured by any illegal search or seizure or by any search and seizure prohibited by the Declaration of Rights of this State. Code Supp., 1955, art. 35, sec. 5, We make it plain that when an officer without a warrant arrests a person for a misdemeanor, the gambling paraphernalia seized from him following the arrest cannot be taken into consideration in determining whether the accused was committing a misdemeanor in the presence or view of the officer.

As appellant was arrested illegally, the search and seizure were likewise illegal. It follows that the race horse bets seized from appellant were inadmissible in evidence. The judgment entered against appellant must therefore be reversed.

> *Judgment reversed and new trial awarded,*
> *the costs to be paid by the County*
> *Commissioners of Baltimore County.*